**Lillian N. Goldstine, Plaintiff-Appellee, v. Lee M. Goldstine, Defendant-Appellant.**

**Gen. No. 47,863.**

First District, Third Division.

March 23, 1960.

Arthur Abraham and Paul H. Leffmann, of Chicago, for defendant-appellant.

Ehrlich and Cohn, and Hoffman and Davis, of Chicago (Maurice L. Davis and Aaron H. Cohn, of counsel) for plaintiff-appellee.

JUSTICE BURKE delivered the opinion of the court.

On July 1, 1938, Lillian N. Goldstine married Lee M. Goldstine. On February 27, 1959, she filed a complaint for separate maintenance, alleging that they lived as husband and wife until February 20, 1959. Two children were born of the marriage, Linda now 20 years, and Lois, now 17 years of age. In the answer filed the same day the defendant denied the material allegations of the complaint. On the day the complaint and answer were filed the parties entered into the following agreement:

"Witnesseth That Whereas: The wife . . . filed in the Superior Court of Cook County, Illinois, a certain complaint for separate maintenance against the husband number 59 S 3284; and has served notice for the entry of orders requiring the husband to vacate and remove himself from the premises at 5490 South Shore Drive, Chicago, Illinois, for the issuance of temporary injunctions, and for the payment of temporary support

for the wife and the minor child of the parties, and for the payment of attorney's fees; and the husband is now occupying the apartment at 5490 South Shore Drive; and the husband is required to go to Tokyo, Japan, on account of business, and it is proposed that the parties agree for the occupancy of said apartment by the wife during the period that the husband is in Japan, and for the support of the wife and children of the parties pending the return of the husband from Japan.

"Now, therefore, in consideration of the mutual covenants of the parties hereto, it is agreed by and between the parties as follows: 1. The husband will remove from the apartment at 5490 South Shore Drive on February 27, 1959. The wife will be permitted to occupy said apartment until June 1, 1959, and thereafter until the husband shall have given the wife five (5) days' notice in writing of his intention to reoccupy said apartment and shall have returned to Chicago. Thereupon, within five (5) days after the receipt of said notice, the wife shall permit the husband to reoccupy said apartment and to have free and uninterrupted possession thereof. After the husband has occupied said apartment for a period of two (2) days, the wife may make such applications to the court as she may desire to require the husband to vacate the premises. The execution of this agreement shall not remove, eliminate or affect any right of the husband to oppose said motions or the right of the wife to make said motions, it being the intention of the parties that they shall after the reoccupation of said apartment by the husband be restored to precisely the same positions as they occupied prior to the making of this agreement. 2. Until the husband shall have served said five (5) days' notice in writing upon the wife and shall have returned from Japan, the husband shall make the following payments and perform the following acts:

321

"(a) Pay to the wife for her support the sum of One Thousand Eight-Three and 33/100 Dollars ($1,083.33) per month. (b) Pay to Linda, one of the children of said marriage, the sum of One Hundred Fifty Dollars ($150.00) per month as her allowance. (c) Pay to Lois, the other child of the marriage, the sum of One Hundred Dollars ($100.00) for her allowance. (d) The husband shall further pay all assessments upon said apartment, shall cause the telephone bills to be paid and shall pay reasonable Standard Club bills. (e) The husband shall cause the floater insurance policy upon certain jewelry and other chattels of the wife to be made payable to her as beneficiary. (f) The husband shall maintain the membership of the husband and wife in the K.A.M. Temple. (g) The husband shall make necessary payments for the school expense of the children. (h) The husband shall pay reasonable expenses for refurnishing the children's bedrooms as heretofore planned. (i) The husband shall not change the beneficiaries upon his life insurance policies. (j) The husband shall further pay all necessary bills for physicians and hospitalization of the wife and the two children of the parties. (k) Said amounts so to be paid by the husband shall be computed from February 1, 1959, deducting therefrom, however, any amounts heretofore paid by the husband to the wife during the month of February, 1959. (1) The undertakings of the husband as herein provided shall extend only until the husband shall have served five (5) days' notice in writing upon the wife and shall have returned from Japan.

"It is expressly agreed between the parties that the amounts agreed to be paid by the husband until his return from Japan shall constitute no index or pattern as to the amounts, if any, to be subsequently paid by the husband to the wife for temporary or permanent

322

support, alimony, or otherwise. It is the contention of the wife that the amounts so agreed to be paid by the husband are inadequate, and by the husband that they are excessive. During the absence of the husband he shall make available to the attorneys and agents of the wife at the office of Herbert Schelly, 77 West Washington Street, Chicago, Illinois, such books of account, records and vouchers as may be reasonably necessary to facilitate determination by the wife's attorneys and agents as to the actual income and assets of the husband. Prior to the return of the husband from Japan to Chicago, or July 1, 1959, whichever date may be the earlier, and so long as the husband shall not be in default under the terms of this agreement, the wife agrees: (a) That she will take no action in the pending proceedings, make no motions for injunctions, support, or other relief in said proceedings pending in the Superior Court of Cook County, Illinois, or any other proceedings. (b) The wife shall take no depositions of the husband. (c) The wife shall take no depositions of any other witnesses, except upon twenty (20) days' notice, and in no event before May 20, 1959. (d) However, the wife and her attorney may in their discretion make such motions for attorneys' fees as they may desire, and the husband and his attorneys shall be free to make such defenses against the allowance of attorneys' fees as they may desire.

"Upon the return of the husband to Chicago, or in any event after July 1, 1959, the wife may make such motions and take such proceedings in the Superior Court of Cook County, Illinois, as she may desire and the husband shall be entirely free to defend against such motions or proceedings and to take such action in said pending case as he may desire. It is the purpose and intention of this agreement to leave the husband and wife in precisely the same position in the pending

proceedings as they were prior to the execution of this agreement. The execution of this agreement shall constitute no admission by the husband that the wife is entitled to maintain any proceedings against the husband for separate maintenance or that the wife is entitled to any relief against him in said proceeding, it being the purpose and intention of this agreement to constitute a stay of said proceedings until the husband returns from Tokyo, Japan, or until July 1, 1959, whichever may first occur, and that thereafter the parties may be entirely free to take such proceedings in the premises as they may desire."

On April 24, 1959, on the motion of plaintiff in accordance with the prayer of her verified complaint and "having heard the evidence and the argument of counsel," the court directed that defendant pay to her attorneys $4,000 as their temporary fees.

On May 15, 1959, plaintiff filed a petition attaching a copy of the agreement, averred that it "has been breached" by the defendant in that he "has failed and persistently refuses to make available his books, records and other documents bearing upon his income and assets for the examination of the plaintiff, her attorneys and auditors, as agreed to by him"; that she has repeatedly, through her attorneys and auditors, tried to obtain an examination as called for in the agreement, but has been unable to conclude same because of the wilful refusal of defendant. She asked that the court enter an order in conformity with the prayer of her verified complaint. Defendant's verified answer to the petition denied that he breached the agreement; denied that he failed or refused to make available his books, records or other documents bearing upon his income and assets for the examination of plaintiff, her attorneys and auditors; denied that plaintiff has been unable to obtain or conclude an examination as called for by the agreement because of any refusal by him;

asserts that he has made available to the attorneys and agents of plaintiff such books of account, records and vouchers as might be reasonably necessary to facilitate a determination by plaintiff's attorneys and agents as to his income; that he is "now in Japan where his presence is necessitated by his business affairs"; that he assumed "divers onerous and unreasonable financial and other burdens by the agreement" in "consideration that he might receive a respite from his pending litigation and go to and remain in Japan until July 1, 1959, to take care of emergent business affairs"; and that he would not be able to get to Chicago from Japan on May 15, 1959, when the motion is to be heard. He prayed that the petition be denied; that the motion be continued until July 1, 1959, or that the hearing on the motion be continued to a date "at which it may be possible" for him to travel from Japan to Chicago; and that the cause be set for hearing on the merits and determined so that he "will not be subjected to the expense of continuous trips from Japan to the United States and return."

On May 26, 1959, the defendant filed a supplemental answer to plaintiff's petition purporting to show his good faith in submitting records concerning his affairs to certified public accountants representing the plaintiff. On May 27, 1959, the court entered an order reciting the motion of plaintiff for injunctive relief and for allowance of alimony and for support of the children *pendente lite* and ordered "that this matter be postponed to June 16, 1959," for the taking of evidence and for full hearing in connection with such application. The court in order to preserve the "present status" further ordered a temporary injunction effective until June 16, 1959, restraining the defendant from entering the apartment and disposing of assets and directed that until June 16, 1959, he comply with the provisions as to payment of money contained in Para-

graph 2 of the agreement, it being understood that the order as to payment of money "be not considered a determination of the validity or enforceability" of the agreement, or a determination binding upon either party as to the proper amounts required to be paid by defendant for the use of plaintiff and the children for alimony and support money; that any order entered on June 16, 1959, for the payment of alimony to plaintiff or support money for the children be retroactive to May 27, 1959; and that payment by defendant, pursuant to the order, be credited against payments required to be made.

On June 17, 1959, the matter coming on to be heard upon the application of plaintiff for injunctive relief and for allowance of alimony and support of the children, *pendente lite,* pursuant to the postponement order of May 27, 1959, the court ordered that the cause be referred to a master in chancery upon the allowance to be made to plaintiff *pendente lite* for alimony and support of the children and costs and expenses, the right of possession of the apartment occupied by plaintiff and the children, the matter of restraining the defendant from selling, disposing, transferring or assigning any of his assets other than in transactions in the ordinary course of business, the master to report his conclusions of law and fact and recommendations. The court further ordered that until and including September 15, 1959, the defendant comply with the provisions of Paragraph 2 of the agreement; that it shall not be considered a determination of the validity or enforceability of the agreement, or a determination binding upon either of the parties as to the proper amounts required to be paid by the defendant for the use of the plaintiff and the children for alimony and support money; that any order entered pursuant to the hearing set for September 15, 1959, or for the payment of alimony for plaintiff or support for the children be

326

retroactive to May 27, 1959; that payments by the defendant, pursuant to the order of May 27, 1959, or pursuant to "the present order" be credited against payments required to be made for the period commencing May 27, 1959, "under such order as may be entered pursuant to the hearing set for September 15, 1959." The order concluded by providing that until September 15, 1959, the defendant be restrained as hereinabove stated. The husband objected to the entry of the order and appealed.

Defendant maintains that the order for temporary alimony and support is erroneous because there was no showing as to his income, his wife's income and what was required for the support of the wife and minor child. Plaintiff answers that the court heard sufficient evidence to properly support the order, which was an interim order to govern until the incoming of the master's report, and was to be retroactive with full credit of all the payments made thereon to protect the defendant. Plaintiff asserts that everything that happened in the case from its inception in February, 1959, to the entry of the order, almost 5 months later, was considered by the court and that the order of April 24, 1959, for the payment of attorneys' fees, recited that the court heard evidence in connection therewith. Plaintiff urges that because of the failure of the defendant to incorporate in the record the testimony heard in the hearing resulting in the order of April 24, 1959, for attorneys' fees, it must be assumed that the absent transcript of the testimony would support the order.

■ ■ The rule for computing a proper allowance for the wife's support and maintenance is to add to the wife's annual income that of her husband, consider what, under all the circumstances, should be allowed her out of the aggregate, and then from the sum so determined deduct her separate income, and the re-

327

mainder will be her proper annual allowance. Harding v. Harding, 144 Ill. 588; Holmstedt v. Holmstedt, 383 Ill. 290; Decker v. Decker, 279 Ill. 300. Section 1 of the Separate Maintenance Act (Sec. 22, Ch. 68, Ill. Rev. Stat. 1959) provides that the court at any time after service of summons and proper notice may make such allowance for temporary alimony, attorneys' fees and suit money as may appear just and equitable as in cases of divorce. Section 15 of the Divorce Act (Sec. 16, Ch. 40, Ill. Rev. Stat. 1959) provides that in every suit for a divorce the wife or husband, when it is just and equitable, shall be entitled to alimony during the pendency of the suit, provided that no order for alimony shall be entered until the court or a master in chancery or special commissioner, to whom the court may refer the cause, shall have determined from evidence the condition in life of the parties and their circumstances. An order to pay temporary alimony must be based on a showing that the financial ability and circumstances of the husband are such that he can pay the alimony he is ordered to pay. Ross v. Ross, 177 Ill. App. 542. Plaintiff states that she has no quarrel with the proposition that the order for temporary alimony must be based upon a proper showing of the respective incomes of the husband and wife and the wife's needs; nor does she quarrel with the rule for computing a proper temporary allowance. She insists that the chancellor was apprised of all the facts and particulars needed to enter the order and that the order should be affirmed.

The order of June 17, 1959, recites that the court considered the record comprising the pleadings, petitions and papers on file therein, the orders theretofore entered and the arguments of counsel, "no evidence being heard." It will be noted that the order of May 27, 1959, states that the application of plaintiff for injunctive relief, alimony and support for the children

328

be postponed until June 16, 1959, "for the taking of evidence and for full hearing in connection with such application." The latter order, entered after the order of April 24, 1959, granting attorneys' fees, recited that the court heard evidence and indicated that the court intended to receive evidence in the hearing of the motion for injunctive relief, temporary alimony and support for the children. The order of June 17, 1959, affirmatively recites that no evidence was heard. In the state of the record we cannot assume that the order was based on evidence.

In the instant case the defendant had joined issue on material allegations of the complaint. He also alleged in his answer that plaintiff has assets and income of her own. There was no showing as to the income or assets of the husband, the income or assets of the wife or the needs of the wife and the minor child. The statement in the order of April 24, 1959, that evidence was heard, does not raise a presumption that the order of June 17, 1959, was based upon evidence in the light of the recital of that order that no evidence was heard. The chancellor could not adopt the provisions of the agreement of February 27, 1959, as an index to alimony and support payments in contravention of the express provisions of the agreement and without taking evidence of their fairness.

Because there was no showing as to the husband's income and assets, the wife's income and assets or what was required for the support of the wife and minor child, the order of June 17, 1959, is reversed without prejudice to any right to move for temporary alimony and child support with retroactive application.

Order reversed.

BRYANT, P. J. and FRIEND, J., concur.