GEORGE ULM, Plaintiff-Counterdefendant, Appellant, *v.* AUDREY ULM, Defendant-Counterplaintiff, Appellee.

(Nos. 54589, 54617, 54782, cons.;

First District—April 8, 1971.

*Rehearing denied May 10, 1971.*

Burditt, Calkins & Wiley, of Chicago, for appellant.

Rinella & Rinella, of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Plaintiff-Counterdefendant ("plaintiff") appeals from three orders of the Circuit Court requiring him to pay temporary alimony and child support, and temporary attorney's fees to his wife on her counterclaim for separate maintenance filed after plaintiff's complaint for divorce. The first order, entered August 8, 1969, provided that the plaintiff pay $800 per month for support of his wife ("defendant") and their only child, retroactive to January 29, 1969, and $4500 in temporary attorney's fees. Plaintiff appealed from this order (No. 54589). On September 23, 1969, the second order was entered, providing that he pay $800 per month pending the appeal, and $1200 for his wife's attorney's fees to defend against the appeal. He appealed from this second order also (No. 54617). A third order was then entered December 17, 1969 (No. 54782) which, in addition to requiring plaintiff to pay $800 per month pending appeal, provided, for the first time, that he pay $1,702.59 for real estate taxes, special assessments, and insurance on the parties' home in which the wife and child were living, and an additional $2500 in attorney's fees to defend the second appeal.

Plaintiff first contends that the amount of the support orders was excessive in view of the parties' respective incomes, and constituted an abuse of the trial court's discretion. His second contention is that the award of a total of $8200 in temporary attorney's fees was similarly an abuse of the trial court's discretion.

The parties were married in 1952 and have one child, a boy, age eleven. They own a home, in which defendant and her son live, which is valued at from $40,000 to $50,000 and is mortgage free. In August of 1965, plaintiff (who is now 38 years old) left the home, taking an apartment which cost him $700 a month to maintain, where he remained until October of 1968. During this time, and while he was living with defendant, plaintiff was employed as the sales manager and secretary of Osgood Displays, a company owned by his father. Prior thereto he had attended Parsons College for 1½ years. Plaintiff testified that from 1965 to 1968 his yearly gross income had varied from about $40,000 to $52,000. part of which he had to return to the company to pay off amounts borrowed in earlier years. His father discharged him in October of 1968 after two major accounts had been lost, sales had dropped by one half,

warnings had been given by his father that he and his wife were spending too much money, and he had been repeatedly told that if this situation did not improve, he would be discharged. When his employment was terminated, he owed the company $23,000, which remains unpaid. The father's testimony concerning plaintiff's discharge and debt was substantially the same, and he testified further that he had no intention of bringing his son back into the company.

Continuing with plaintiff's testimony, he said that after losing his position, he accepted a job as captain of a private yacht in the Bahama Islands at $500 a month plus full maintenance. He held this position from October of 1968 to April of 1969. During that period, he sent $100 per week to defendant. He then returned to Chicago, and after six or seven job interviews, began working for Unimark, International, owned by a friend of his father, training as an account executive. His salary on this job, which he began May 1, 1969, was the highest offer he received, being $18,000 per year gross, which the court recognized would net him approximately $14,000. During the three years he and defendant were separated, until he lost his job with Osgood Displays, he paid her approximately $14,000 per year. Aside from his half interest in the parties' home, plaintiff's only substantial asset is approximately $52,000 which will be due him under Osgood Displays' profit sharing and pension plans when he reaches age 65.

Defendant testified that during the three-year period from the time she and her husband were separated until he left his job at Osgood Displays, he was paying her $16,000 or $17,000 per year for support, which maintained her at the standard of living she had enjoyed prior to her husband's departure. After her husband left Osgood Displays, he sent her $100 per week. Since June of 1969, she has been receiving approximately $500 per month in voluntary support payments from plaintiff. She has also taken employment as a provisional elementary school teacher, and nets somewhat less than $4,000 per year. Defendant testified that, since October of 1968, she had received gifts totaling about $3,000 from her father-in-law, of which $300 was for a ski vacation with her son in Colorado. This, together with monies received from her husband between October of 1968 and July of 1969, amounted to approximately $6,300 for the nine-month period. Plaintiff testified further that she had been forced to lower her standard of living and borrow money from various sources, including a woman who worked for her. Her indebtedness was $5,700 to $6,000, including loans of $1400.

Defendant's theory of the case is that plaintiff was never "fired," but that he and his father entered into a conspiracy to reduce his income and

make defendant and her child suffer in order to force her into accepting a divorce on plaintiff's terms. In support of this theory, defendant testified to conversations she had with her husband's father, who indicated that he was surprised when his son had left his job in October of 1968 as he needed his son's services. Plaintiff's father refused this evidence unequivocally, testifying that he had had conversations with his son over a period of about eight months, telling him that his services were not proving satisfactory and that he might be out of a job. Both father and son testified that plaintiff had, in fact, been discharged from his position with Osgood in September, 1968. No evidence was offered to show that plaintiff actually had a net income in excess of the $14,000 received from Unimark.

This yearly net income distributed between the parties in accordance with the Circuit Court's orders would produce a result approximately as follows:

### Plaintiff

| | | |
|---|---:|---:|
| Salary (net), approximately................ | | $14,000.00 |
| Less: Temporary alimony ($450 per month) and child support ($350 per month) ................... | $ 9,600.00 | |
| Insurance, taxes and assessments on house ......................... | 1,702.59 | 11,302.59 |
| Net remaining to plaintiff for his living expenses ...................... | | $ 2,697.41 |

Plaintiff would also be required to pay $8,200 in temporary attorney's fees.

### Defendant and Child

| | |
|---|---:|
| Defendant's salary (net), approximately....... | $ 4,000.00 |
| Temporary alimony $450 per month) and child support ($350) per month........ | 9,600.00 |
| Rent-free use of home...................... | ? |
| Taxes, insurance, and assessments........... | 1,702.59 |
| | $15,302.59 |

This total is seen to be without attributing any value to rent-free use of the home owned by both parties, although this item should have been considered in determining the amount of support ordered for defendant

and her son. (*Franke v. Franke*, 87 Ill.App.2d 187; 230 N.E.2d 493, 494.) However, even regardless of this matter, the large disparity of resulting income between the parties is apparent.

An action for separate maintenance is provided for by Ill. Rev. Stat. 1967, ch. 68, par. 22, which grants the court power to "make such allowance of temporary alimony, attorney's fees, and suit money as may appear just and equitable, as in cases of divorce." Under the Divorce Act, temporary alimony is available while the suit is pending, "when it is just and equitable," and "provided that no order or decree for alimony shall be entered until the court has determined from evidence the condition in life of the parties and their circumstances." Ill. Rev. Stat. 1967, ch. 40, par. 16.

The standard for determining the proper amount of alimony has been set out in *Richheimer v. Richheimer*, 59 Ill.App.2d 354, 359, where the court said:

"The wife is entitled to be maintained and supported in a manner consistent with her station in life and the husband's ability, *if the money required therefor be not more than a just and equitable proportion of the joint income of herself and her husband.*" (Emphasis supplied.)

Also, in *Goldstine v. Goldstine*, 25 Ill.App.2d 319, 328, the court stated:

"An order to pay temporary alimony must be based on a showing that the financial ability and circumstances of the husband are such that he can pay the alimony he is ordered to pay."

Defendant argues that there is no great disparity between the income of the parties, urging, for example, that the $1,702.59 that plaintiff was ordered to pay for real estate taxes, insurance, and assessments on the home not be considered part of her income because they are monies she must expend. We find no merit in defendant's argument in this connection, and point out that it does not, in any event, meet the point in the *Goldstine* case, that the evidence must establish the husband's ability to pay the amount ordered. Defendant also argues that plaintiff's income, as supplemented by an expense account, is actually more than the amount found by the Circuit Court. If that is the case, it would have been proper to offer evidence of this alleged fact. On the record before us, however, we hold that the court's finding as to plaintiff's net income is supported by the testimony. We also find, nevertheless, that the order appealed from did not equitably apportion the incomes of the parties.

■■ We conclude that a distribution of the parties' income which represents the equitable maximum plaintiff should be required to pay on the basis of this record, is:

*Plaintiff*

| | | |
|---|---|---|
| Salary (net), approximately............... | | $14,000.00 |
| Less: Temporary alimony ($300 per month) and child support ($250 per month)................... | $ 6,600.00 | |
| Insurance, taxes, and assessments on house.................. | 0 | 6,600.00 |
| Net remaining to plaintiff for his living expenses ..................... | | $ 7,400.00 |

Plaintiff would also be required to pay defendant's attorney's fees as hereafter provided.

*Defendant and Child*

| | | |
|---|---|---|
| Defendant's salary (net), approximately......$ 4,000.00 | |
| Temporary alimony ($300 per month) and child support ($250 per month)...... | 6,600.00 |
| Rent-free use of home..................... | ? |
| | $10,600.00 plus rental value of the home as referred to above. |

We have eliminated the $1,702.59 for insurance, taxes and assessments from the lower court's third order for several reasons: First, these items should properly be charged against the rental value of the house. To that extent the rental value would be reduced, but nothing was attributed to that item anyway. Although unsupported by testimony, it can be assumed that the rental value (or half thereof) of a $40,000 to $50,000 house would substantially exceed the $1,702.59 in assessments, taxes, and insurance. Further, in the light of what we consider to have been an inequitable distribution of income in the court's first and second orders, the addition of the $1,702.59 in the third order not only exaggerated the disparity, but also appears obviously to have been in the nature of an improper penalty for plaintiff's having taken the second appeal.

■■ The second question relates to the amount of temporary attorney's fees properly allowable. Plaintiff claims that the total award of $8,200 is excessive in this case. The fee allowed by the trial court must be permitted to stand unless it is shown that the award clearly amounted to an

abuse of discretion. *Goldstein v. Handley*, 390 Ill. 118, 125; *Roback v. Roback*, 59 Ill. App. 2d 222, 231.

As to the first award of $4500, the record does not disclose specifics as to the services rendered, but the trial judge had conducted all the hearings—eight or more in number—and was necessarily familiar with what had been involved in the presentation of defendant's case. It is true that considerable time was spent in arguing a conspiracy which was not proved, and in arguing for support payments based in part upon plaintiff's profit sharing and pension plan rights which will not be available to him until about 1995. The court found, however, that the services required of defendant's counsel had consumed many hours and we cannot say that the $4500 fee was awarded in abuse of the court's discretion. See *Lauzen v. Lauzen*, 81 Ill.App.2d 472, 474-475; and *Central Standard Life Ins. Co. v. Gardner*, 36 Ill.App.2d 292, 304.

■■ We believe, however, that the $1200 and $2500 fees allowed in the second and third orders were excessive, in that they were for services in defending appeals involving substantially identical issues. In fact, all three appeals were consolidated on plaintiff's motion, so that only one set of briefs and one argument were required of counsel. Under these circumstances, the award of $2500 in additional attorney's fees for defending the second appeal bore no relation to the work involved, and constituted an abuse of the trial court's discretion. Furthermore, as in the order to pay taxes, it clearly appears that the $2500 fee was awarded by way of a penalty for plaintiff's having taken the appeal. That order, in so far as it awarded $2500 additional attorney's fees, is therefore reversed. We conclude that the $1200 allowed by the second order is adequate compensation for the services rendered on appeal, and that order is therefore affirmed as to the fee award.

In conclusion, the order of August 8, 1969 (No. 54589), is reversed as to the amount of temporary alimony and child support and the cause is remanded with directions to order temporary alimony of $300 per month, and child support of $250 per month. The order of August 8, 1969, also entered judgment for arrearage in the amount of $1600 for the six-month period from January 29 to July 29, 1969, based upon the alimony and support order of $800 per month. By reduction to $550 per month, the judgment for arrearage should be $100 instead of $1600, and shall be modified accordingly. The order of August 8, 1969, is affirmed as to all other matters contained therein.

The order of September 23, 1969 (No. 54617), is affirmed as to the allowance of $1200 attorney's fees on appeal, but is reversed as to the temporary alimony and support provisions, and the cause is remanded

with directions to require plaintiff to pay to defendant's attorney the cost of printing her brief in this court.

The order of December 17, 1969 (No. 54782), is reversed in its entirety.

The parties, however, shall each bear his own court costs in this court as to all three appeals.

Affirmed in part,
reversed in part,
reversed and remanded in part.

STAMOS, P. J., and DRUCKER, J., concur.