JOY M. EULE, Plaintiff and Counterdefendant-Appellee, v. RUDOLPH EULE, Defendant and Counterplaintiff-Appellant.

(Nos. 59075, 59485 cons.;

First District (3rd Division)—November 21, 1974.

*Rehearing denied December 19, 1974.*

Goldstein & DuBois, Ltd., of Chicago (Arnold D. Goldstein and Elliott L. DuBois, of counsel, and David Cover, Senior Law Student), for appellant.

Arthur Rosenblum, of Chicago (Joseph A. Rosin, of counsel), for appellee.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Rudolph Eule, appeals from a series of orders of the circuit court of Cook County directing him to pay temporary alimony and attorneys' fees to plaintiff, Joy M. Eule, and her attorneys, as well as temporary alimony *pendente lite* and attorneys' fees *pendente lite* during the prosecution of the appeals to this court.

Plaintiff has been married six times. Defendant has been married nine times. The parties have been married to each other three times. No child was born or adopted during these three marriages. Plaintiff bore three children by Victor Goulding, to whom she was married twice and whose last marriage immediately preceded the present one. Plaintiff had a fourth child by another husband, and that child was later adopted by Goulding. Plaintiff and Goulding dissolved their second marriage on November 17, 1971, and their divorce decree contained a property settlement.

On the following day, November 18, plaintiff and defendant remarried. Immediately prior to the ceremony in the city of Chicago, the two executed an antenuptial agreement. The document contained recitals acknowledging their previous unsuccessful marriages and recognizing the uncertainity of their pending marriage. The parties stated therein the value of their assets. Plaintiff's assets, consisting of proceeds from the sale of her house and of securities, totalled $45,000. Defendant attached an exhibit to the agreement detailing his present aggregate worth at death to be $600,000. The agreement contained a death-benefit provision, which guaranteed plaintiff a minimum of $50,000 of defendant's assets at the latter's death and which provided $1,000 to defendant at plaintiff's death from her assets. The agreement also contained a for-

feiture clause, providing essentially that if either party, regardless of fault, separated from the other or filed a suit for separate maintenance or divorce within 7 years of the date of the marriage, that spouse waived any right he or she might have against the other for "alimony, dower, support or otherwise under any law." The agreement was signed by both parties in defendant's attorney's office, notarized, and witnessed.

Fifty-four days later, plaintiff left their abode and went to Florida. She came back to Chicago in February, 1972, packed her belongings, and returned to Florida.

On February 1, 1973, plaintiff filed an amended complaint for divorce or, in the alternative, separate maintenance, charging mental cruelty. After hearings were held on plaintiff's motion for temporary alimony and attorneys' fees, the trial court ordered defendant to pay her $167 per week for temporary alimony and support and $3,050 to her attorneys for temporary fees. Defendant appealed the trial court's denial of a motion to vacate that order. Thereafter, the court ordered defendant to pay $167 per week in temporary alimony *pendente lite* and additional attorneys' fees of $1,500 *pendente lite*. Defendant appealed from that second order. Defendant then filed a counter-complaint for divorce, charging desertion, and the court awarded plaintiff temporary alimony in the amount of $750 per month not to exceed 6 months and her attorneys $1,000 to defend against the counter-complaint. When defendant appealed from this third order, the court granted plaintiff temporary alimony *pendente lite* in the amount of $750 per month not to exceed 6 months and attorneys' fees of $1,500. Defendant also appealed from this order, and the four appeals have been consolidated for our review.

Defendant contends that the trial court erred in refusing to enforce the forfeiture clause of the antenuptial agreement; that the trial court abused its discretion in granting plaintiff temporary alimony, temporary alimony *pendente lite*, her attorneys' fees, and her attorneys' fees *pendente lite*; and that the hearings were not conducted in a fair and impartial manner consistent with the requirements of due process. Plaintiff responds that the antenuptial agreement is void as against public policy; that the trial court's decisions as to temporary alimony and attorneys' fees were proper and supported by the evidence; and that the hearings were conducted fairly and without substantial prejudice to defendant.

We must first consider the issue of the validity of the forfeiture clause contained in the antenuptial agreement.

■■ Persons competent to contract may execute an agreement prior to marriage settling in advance the rights of the respective spouses in the property of each other at the date of either's death. (*Seuss v. Schukat*

(1934), 358 Ill. 27, 192 N.E. 668.) Marriage is sufficient consideration for such a contract. (*Guhl v. Guhl* (1941), 376 Ill. 100, 33 N.E.2d 185.) The validity of such a contract depends upon whether the parties have knowledge or reasonably ought to have knowledge of the extent of each other's property, mindful that one's waiver of rights in the other's property or the grant of a disproportionate sum in his property shall raise a rebuttable presumption of concealment. *Megginson v. Megginson* (1937), 367 Ill. 168, 10 N.E.2d 815.

■■ Whether or not these principles of law should be applied to a premarital agreement which attempts to regulate or modify statutorily created rights upon the separation or divorce of the spouses is an issue which has created much debate. Characterizing such a clause as an invitation to promote discord and instability in marriage, the majority of jurisdictions hold a provision which attempts to modify such statutory rights to be invalid per se. (See *Norris v. Norris* (Iowa 1970), 174 N.W. 2d 368; *Fricke v. Fricke* (1950), 257 Wis. 124, 42 N.W.2d 500; *Crouch v. Crouch* (1964), 53 Tenn. App. 594, 385 S.W.2d 288.) The trend in the law, however, is for courts to analyze the terms of these clauses on a case-to-case basis and uphold their validity if they are fair and reasonable. (See *Posner v. Posner* (Fla. 1970), 233 S.2d 381; *Unander v. Unander* (Ore. 1973), 506 P.2d 719; *Buettner v. Buettner* (1973), 89 Nev. 39, 505 P.2d 600.) As shall be seen later, this court's decision in *Volid v. Volid, infra,* places Illinois in agreement with the recent trend.

The issue that must be resolved by us in the present case is a narrow one—whether the trial court was correct in refusing to enforce the forfeiture clause of the antenuptial agreement insofar as it waived either spouse's right to support or temporary alimony during the marriage, if the marriage broke down within 7 years of the date of the wedding.

■■■ Courts in this state have consistently held void clauses in postnuptial agreements which attempted to avoid the husband's legal duty of support during marriage. (*Threw v. Threw* (1951), 410 Ill. 107, 101 N.E.2d 515; *Berge v. Berge* (1937), 366 Ill. 228, 8 N.E.2d 623.) Logic dictates that the same result shall occur when such a clause is included in an antenuptial agreement. (See *Lindsay v. Lindsay* (Fla. App. 1964), 163 S.2d 336.) By the very wording of the clause in this case, if either spouse, regardless of fault, separated from the other within 7 years of marriage, he or she gave up her statutory right to seek support or temporary alimony. We believe the trial court was correct in refusing to enforce this forfeiture clause in regard to temporary support and alimony.

Defendant relies upon *Volid v. Volid* (1972), 6 Ill.App.3d 386, 286 N.E.2d 42, in his effort to support his position. In that case the parties

entered an agreement prior to marriage in which they specified that in the event of a decree of separate maintenance or divorce the husband would pay to his spouse a lump sum settlement of $50,000 if the decree were entered after 3 years. The lump sum settlement was in lieu of her rights to property, alimony and support. When the husband filed suit for divorce after the 3-year period, the wife counter-claimed for separate maintenance and successfully sought temporary support. This court upheld the agreement, and ordered the trial court's allowance for temporary support to be deducted from the lump sum settlement agreed to by the parties.

*Volid* indicates that a trial court may be bound to enforce a total waiver of temporary alimony and support where the agreement guarantees a fair and equitable lump sum settlement of the parties' statutory rights upon the issuance of a decree of separate maintenance or divorce. A reading of the case shows that the court enforced the contract primarily because of the "generous provision" contained in it which probably provided "more ultimate support" than a court would have mandated absent such an agreement.

In the present case, the forfeiture clause waived all right to alimony and support, temporary and permanent, if the marriage failed within seven years of marriage. No settlement was provided guaranteeing the wife an equitable settlement in lieu of the waiver. Moreover, although the contract in *Volid* was geared to the entry of a court decree of separate maintenance or divorce, the clause in the instant case would bar the wife's right to support even in the event of a separation absent such a decree, regardless of fault. In our opinion, the forfeiture clause represents an attempt by defendant to relieve his duty of support to his wife during marriage, and it must fail.

■■ Consequently, we conclude that the trial court was correct in holding that the clause did not stand as a bar to the entry of an order granting temporary alimony to plaintiff. We express no opinion at this time regarding the validity of the clause in respect to its attempt to waive permanent alimony.

Defendant's next argument is that the trial court erred in granting plaintiff temporary alimony, temporary alimony pendente lite, temporary attorneys' fees, and temporary attorneys' fees pendente lite. The crux of his position is that the trial court refused him the right to show that plaintiff possessed sufficient assets to support herself and to pay her own attorneys' fees.

When the trial court commenced a hearing on plaintiff's first application for temporary alimony and fees, she testified that except for some furniture she owned in an apartment she occupied in Florida, she had

no assets. According to plaintiff, her living expenses were being furnished by her ex-husband Goulding and by unsecured, written loans from her brother, Jay Gale.

Defense counsel then attempted to show that her testimony was in direct conflict with the Goulding divorce decree entered the day before plaintiff's marriage to defendant and to the execution of the antenuptial agreement. In the Goulding decree, the court expressly found that Goulding owed plaintiff $6,500, that she was to be awarded two automobiles, and that she was entitled to all monies from the sales of certain real estate located in Highland Park. In the antenuptial agreement, plaintiff swore that her assets totalled $45,000, consisting of $40,000 from the sale of the real estate plus $5,000 in securities. The trial court sustained plaintiff's objection to the introduction of these documents. However, plaintiff's counsel was permitted to examine defendant regarding his statement of assets attached to the antenuptial agreement.

At the close of the hearing, the court found defendant received $25,000 per year salary from his importing business; that his net disposable income after taxes from all sources was $18,500; that plaintiff "needs" $167 per week for alimony and support; that plaintiff's attorneys were entitled to $3,050; that the "unrebutted" testimony of the plaintiff was that she was without assets and was unemployed; and that defendant "admittedly" had $600,000 in his estate.

■■■ An award of temporary alimony rests within the sound discretion of the trial court, to be reversed only upon evidence of an abuse of discretion. Such an award is authorized by section 15 of "An Act * * * in relation to divorce" (Ill. Rev. Stat. 1971, ch. 40, par. 16), which provides in part:

> "[I]n every suit for a divorce the wife or the husband when it is just and equitable, shall be entitled to alimony during the pendency of the suit, provided that no order or decree for alimony shall be entered until the court has determined from evidence the condition in life of the parties and their circumstances."

To properly determine the "condition in life of the parties," the order must be based on a showing of the income and assets of both parties. (*Rabin v. Rabin* (1965), 57 Ill.App.2d 193, 206 N.E.2d 850; *Goldstine v. Goldstine* (1960), 25 Ill.App.2d 319, 167 N.E.2d 30.) In determining temporary support during the suit, the amount of the award is not limited solely by defendant's income; the amount of property possessed by him may also be considered. *Roback v. Roback* (1965), 59 Ill.App.2d 222, 207 N.E.2d 130; see also *Harding v. Harding* (1892), 144 Ill. 588, 32 N.E. 206.

■■ In our view, the trial court abused its discretion in awarding

plaintiff temporary alimony and attorneys' fees without first admitting and considering the two exhibits presented by defendant. The exhibits not only tended to impeach plaintiff's testimony that she lacked any assets but also constituted substantive evidence that she had assets. The court was duty-bound to explore and evaluate in full plaintiff's financial condition. The statute does not permit automatic support for a wife, no matter how large her husband's financial resources may be, if she is financially capable of providing for herself. The trial court erred in failing to explore plaintiff's financial resources.

We recognize that at a subsequent hearing for temporary support and attorneys' fees following defendant's filing of a counter-complaint for divorce, conducted some 4 months after the first award had been entered and after two appeals had been filed in this court, the trial court allowed the Goulding divorce decree and antenuptial agreement to be admitted into evidence. However, even at that hearing, the record does not indicate that the court considered the contents of the exhibits. At one point, the court stated that all it wanted to know "is what can he give her, what she needs, that's all." During argument, plaintiff's counsel repeated the same theme. This does not reflect proper consideration of plaintiff's financial status.

It is our belief that the testimony of plaintiff and her brother was so important that a specific finding regarding the content of their testimony was necessary to sustain the court's awards. Plaintiff's testimony contradicted both the court's holding in the Goulding divorce decree and her sworn statement in the antenuptial agreement that she had the legal right to the proceeds of the sale of the Highland Park real estate. Both she and her brother contended that the proceeds were being held by the brother in an oral trust agreement for the benefit of her children. However, the brother's deposition testimony, admitted into evidence by stipulation, revealed that he was unsure of his precise legal role in handling the money. Although the proceeds were supposedly held in trust, the brother admitted that he kept the cash in his safety box and that several thousand dollars were loaned to plaintiff in unsecured and unwritten transactions to be repaid whenever she could. Certainly, the possibility that the trust was a sham transaction needs to be resolved.

■■ We believe that the court did not explore sufficiently the trust arrangements so as to delineate plaintiff's financial condition. Although the evidence fully supports the conclusion that defendant is in a position to pay reasonable temporary alimony and attorneys' fees, the evidence does not at the same time show that plaintiff is necessarily entitled to them. A full and orderly hearing should resolve the question.

In view of our holding, it is unnecessary to consider defendant's final contention that the hearings were not conducted in accordance with due process.

For the reasons stated, the orders of the circuit court of Cook County are reversed and the cause is remanded for a hearing not inconsistent with the holdings of this opinion.

Reversed and remanded.

DEMPSEY and MEJDA, JJ., concur.