DORIS L. PARNIAWSKI *v.* STANLEY J. PARNIAWSKI, SR.

SUPERIOR COURT        NEW HAVEN COUNTY        FILE NO. 138854

Memorandum filed March 4, 1976

*Richard H. Simons,* for the plaintiff.

*Bernard Joy,* for the defendant.

GRILLO, J. The plaintiff seeks a dissolution of her marriage to the defendant and requests relief in the nature of alimony, an assignment to her of a part of the defendant's estate, and counsel fees. The defendant resists the claim for relief via a special defense that the parties had entered into an antenuptial agreement precluding her or the defendant in the event of a dissolution of the marriage from seeking and obtaining from each other alimony, attorney's fees, or any part of the estate owned by either of the parties prior to the marriage. The plaintiff has demurred to that special defense, maintaining essentially that an antenuptial agreement that the wife should receive no alimony is void as contrary to public policy and that it cannot supersede the statutory power of the Superior Court to award alimony or to award part of the estate of either spouse to the other. It is conceded that both parties had been previously married and had separate estates prior to their marriage and at the time the antenuptial agreement was entered into.

At common law, a property settlement or agreement between prospective spouses was void, it being considered that the antenuptial contract was extinguished by the marriage. Likewise, husband and wife because of their unity could not convey property to each other, and any such transaction was considered void and of no effect, it being the opinion of the courts that those transactions would inject a disturbing influence of bargain and sale into the marriage relationship and induce a separation rather than a unity of interest. See 41 Am. Jur. 2d, Husband and Wife, §§ 256, 283. The husband by marriage acquired a right to use of the real estate of his wife and an absolute right to her chattels. *Griswold* v. *Penniman*, 2 Conn. 564, 565. The husband at common law might restrain his wife of her liberty and even chastise her. *Brown* v. *Brown*, 88 Conn. 42, 43.

A fundamental change in the status of married women with regard to the public policy of this state, however, was enunciated in 1877 by the passage of "An Act in Alteration of the Act concerning Domestic Relations," commonly called the Married Women's Act. Public Acts 1877, c. 114.[1] Recent legislation provides for a commission on the status of women. General Statutes, c. 812.

This state has placed its stamp of approval on a contract entered into in contemplation of marriage in which each prospective spouse released any claim to the property owned by the other at the time of the marriage or thereafter, agreeing that on the death of either, the survivor should have no claim to his or her property. The court, in construing the then § 5156 of the General Statutes, now § 46-12 of the General Statutes, opined that "[o]n principle there appears to be no good reason why such an agreement, if fairly made and entered into, by a woman of full age, for adequate consideration received, should not be binding upon her." *Sacksell v. Barrett*, 132 Conn. 139, 145, citing *Staub's Appeal*, 66 Conn. 127, 134.

While the Supreme Court of this state has discountenanced contracts for the purpose of facilitating divorce as being contrary to public policy, it has acquiesced in contracts made in a foreign state after divorce proceedings have been independently commenced or determined upon and where the agreement is, in fact, an amicable agreement as to the amount of alimony to be paid in the event of a divorce being granted. "We think it clear that the state of Connecticut is not deeply concerned as a matter of public policy in reprehending this con-

---

[1] Cf. General Statutes, 1975 Rev., chapter 809 for a perusal of the rights of spouses. More specifically, see § 46-9 (spouses' property rights not affected by marriage); § 46-10 (liability for certain expenses); chapter 811, § 46-50, § 46-52 (alimony); § 46-54 (modification of alimony); and § 46-51 (assignment of property).

tract." *Maisch* v. *Maisch,* 87 Conn. 377, 382. The law formerly attaching the aforementioned subjection to the legal status of a married woman has been abolished either by legislation or by the continuous pressure of judicial interpretation. *Brown* v. *Brown,* supra, 43.

In view of the relatively equal status of women to men under the law, as it is now evolving, married couples should not be deprived of the right by contract to divide their property as they please. *In re Estate of Harber,* 104 Ariz. 79.

"By an antenuptial settlement or agreement the parties may define their property rights in property existing or after-acquired, and they may vary substantially property rights that would otherwise arise on their marriage by operation of law, superseding, in a sense, statutes on that subject. . . . Such agreements or settlements are favored by public policy as conducive to the welfare of the parties and the best purpose of the marriage relationship, and to prevent strife, secure peace, adjust rights, and settle the question of marital rights in property, thus tending to remove one of the frequent causes of family disputes—contentions about property and allowances to the wife. What is law for the wife is also law for and governs the husband's rights in such cases. They stand on an equality, and if the terms of the contract would be valid as to the wife, they are equally so as to the husband." 41 Am. Jur. 2d, Husband and Wife, § 283.

While there is validity to the Madison Avenue pronouncement that "you've come a long way, baby," it is equally true that the former complete protective role of the court regarding alimony is no longer necessary in the light of social changes. The new concept of divorce, now euphemistically referred to as dissolution, in which there is no "guilty" party, has added many new considerations involved in

the award of alimony and also includes the right
of the husband to obtain alimony as against his
wife.  General Statutes § 46-52.  In her desire to
come a long way, however, a woman has taken on
correlative duties by operation of law.[2]

With the fact that the ratio of marriages to
divorce has reached a disturbing rate in many states
and "[w]ith divorce such a commonplace fact of
life, it is fair to assume that many prospective mar-
riage partners whose property and familial situa-
tion is such as to generate a valid antenuptial agree-
ment settling their property rights upon the death
of either, might want to consider . . . —and agree
upon, if possible—the disposition of their property
and the alimony rights of the wife [or of the hus-
band] in the event their marriage, despite their
best efforts, should fail." *Posner* v. *Posner,* 233
So. 2d 381, 384 (Fla.).

Suffice it to say that there is nothing in the present
agreement, taking into consideration the many
social changes that have developed with reference
to women's rights since the promulgation of the
Married Women's Act, that offends the public policy
of this state as enunciated in legislation and judicial
decisions relative to the legal rights and duties of
husband and wife.

This court is not unmindful of the case of *Van-
Zandt* v. *VanZandt,* 15 Conn. Sup. 262, where a
written agreement such as the one in the present
case was deemed by the court to have no binding
effect.  That decision, however, is not authority
for the proposition that an antenuptial agreement
relating to alimony or estate of the parties, fairly
and equitably made by men and women of full age
is, as asserted by the plaintiff, void.

The demurrer is overruled.

[2] See footnote 1, supra; see also General Statutes §§ 17-320, 17-321,
52-572, and 52-572d.