Rita J. FERRY, Appellant,

v.

Nelson E. FERRY, Respondent.

No. KCD 30073.

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

R. M. Gifford, Green City, for appellant.

Joseph M. Ellis, Macon, for respondent.

Before SHANGLER, P. J., WASSER-STROM, C. J., and CLARK, J.

CLARK, Judge.

In this appeal from the judgment entered in a marriage dissolution case, appellant wife asserts error in decretal provisions for division of marital property and denial of maintenance pursuant to terms of an antenuptial agreement. An extended recitation of the facts, essentially undisputed, is necessary to place the controversy in appropriate context.

The parties first became acquainted some six months prior to the marriage while respondent was engaged in farming leased acreage near appellant's then place of residence. Each had prior marriages terminated by divorce and each had one child born of such earlier unions. During their court-ship a mutual interest in farming was a factor of attraction and appellant worked helping respondent in the fields almost every day.

The date of the marriage was January 4, 1973. Some weeks earlier, in anticipation of the marriage, respondent had suggested and the parties had discussed the desirability of a formal agreement to settle property matters upon termination of the marriage by death or divorce. Appellant prior to the marriage owned some personal property of insignificant value. Respondent's assets consisted of farm machinery, motor vehicles, livestock, crops and cash. Appellant's motivation for entering into the agreement establishing future restrictions on property and economic claims was her mistaken opinion that without such an agreement respondent or his family would share in an inheritance in prospect for appellant's son by a prior marriage from the estates of appellant's mother and stepfather.

Respondent had the antenuptial agreement drawn by his attorney. A copy was supplied to appellant a few days before the marriage. Appellant neither sought nor received legal advice as to the effect of the document before she accompanied respondent to his attorney's office on January 2, 1973 for the purpose of signing the agreement. While there, the terms of the agreement were discussed. Appellant noted some changes she wanted made, but because of the press of time, the agreement was signed without change but subject to subsequent modifications to conform to appellant's wishes. These changes were not, however, made and the effective agreement is that in the form as originally prepared.

The antenuptial agreement provided for retention by the parties of their separate property during and subsequent to the marriage and for the release of any future claim to homestead, family allowance or any other marital rights on death and for the release of any future claim for support, alimony, attorney fees and costs on separation or divorce. Appellant, however, was to receive the household furnishings, an automobile and $1000.00 should she survive re-

spondent after remaining married to and residing with him to his death or, in the event of divorce, appellant was to receive the household goods and the automobile.

A schedule of assets owned by respondent was attached to the agreement as an exhibit. Farm equipment, vehicles, livestock and cash were listed, but no values were shown, except as to the cash, and no debts or encumbrances appear. Some assets were omitted including some bonds and life insurance. No assets of appellant were listed, apparently because of the nominal worth attached. Neither party owned any real estate and none was acquired during the marriage.

The separation of the parties occurred April 27, 1977 and appellant commenced her action for dissolution May 20, 1977. Irretrievable breakdown of the marriage was alleged and was not contested. No allegations of marital misconduct were made and no evidence on the subject was offered at trial. Appellant's day-to-day participation in the family farming venture was undisputed, the evidence being that appellant operated farm machinery, drove trucks and otherwise worked in crop production and in farrowing and finishing hogs and feeder pigs.

The extent of appellant's education was not disclosed. She had, however, been employed from time to time before the marriage as a practical nurse and returned to this occupation after the separation. At the time of trial she was earning $130.00 to $140.00 a week. Respondent remained on the farm continuing his agricultural pursuits as before.

As noted above, the value of assets brought by appellant to the marriage was nominal, such property having consisted of personal effects, some household goods and an automobile which appellant later assigned to her mother in repayment of a debt. The net worth of respondent cannot be calculated as of the date of the marriage because of the omissions from the agreement exhibit of values, debts and some as-

sets. At trial, appellant offered and the court received as exhibits a financial statement of the parties prepared as of January 1977 and an income tax return. Such exhibits were not filed with this court and the data therein which would cast some light on this subject is therefore unavailable. It can be concluded, however, that respondent's personal property at the time of the marriage was of significant value. At the time of the separation the same types of assets were owned but, by reason of four years' farming activity some vehicles and machinery had declined in value, some had been replaced by newer equipment or additions and livestock and crops were those of the current season.

The court in its decree ordered the marriage dissolved and, after finding the antenuptial agreement to be controlling as to division of property, award of maintenance and allowance of fees and costs, granted appellant the household furnishings and automobile and set all other property over to respondent subject to any debts owed thereon. Appellant's request for maintenance and an allowance of attorney fees was denied.

On this appeal appellant challenges the efficacy of the antenuptial agreement to strip her of her share in marital property and of her claim to maintenance on the grounds that such agreements are against public policy and that the agreement was an overreaching by respondent and fundamentally unfair to appellant. Also implicit in consideration of these issues is the effect of the Dissolution of Marriage Act, Sections 452.300 to 452.415,[1] which, pursuant to Section 452.415, controls this proceeding, although the antenuptial agreement and the marriage predated the Act.

■ Appellant's first point, the rejection of antenuptial agreements on grounds of public policy, requires examination both as a general concept and as expanded or modified by the Dissolution of Marriage Act. Appellant cites no Missouri authority supporting the contention that public policy in

1. All statutory references are to RSMo 1978.

this state disapproves of antenuptial agreements. Decisions from a number of other jurisdictions do, however, indicate a consistent historical pattern of judicial opposition to agreements contingent on divorce. A typical statement of the rule so evolved is, "Any antenuptial agreement that looks forward, provides for, facilitates, or tends to induce a separation or divorce after marriage is contrary to public policy and void." Evans, *Antenuptial Contracts*, 47 *UMKC Law Review* 31, 45 (1978), quoting 2, A. Lindey, *Separation Agreements and Antenuptial Contracts* § 90–27 (1964).

The decisions express a different attitude toward antenuptial agreements contingent on death, an arrangement which finds favor premised in part on an assumption that such agreements promote domestic harmony. In fact, Missouri has by statute expressly approved marriage settlement contracts to take effect on death. Section 474.-120. Although the subject agreement also provided for restriction of death benefits, that aspect of the antenuptial agreement treating inheritance and survivorship rights is not within the scope of this case.

In those cases which attempt justification for general opposition to antenuptial agreements contingent on divorce, the reasons most frequently given are (1) contracts are not compatible with and denigrate the status of the marital relation, (2) such agreements tend to facilitate and provide an inducement for divorce, and (3) a contract waiving or minimizing alimony may cast an indigent spouse on public charity. Examples of cases adopting these views are: *Norris v. Norris*, 174 N.W.2d 368 (Iowa 1970); *Crouch v. Crouch*, 53 Tenn.App. 594, 385 S.W.2d 288 (1964), and *Fricke v. Fricke*, 257 Wis. 124, 42 N.W.2d 500 (1950), in which it was stated that such an agreement "invites dispute, encourages separation and incites divorce."

More recently, however, a line of authority supporting antenuptial agreements contingent on divorce has emerged. Foreshad-owing this development were comments by the Missouri Supreme Court in *Mathis v. Crane*, 360 Mo. 631, 230 S.W.2d 707, 712 (1950). Although disposition of the case resulted in rejection of the premarital contract on the ground that the husband had failed to disclose fully the extent of his assets, the court noted by general observation that marriage settlements are not against public policy in Missouri.

The case most frequently cited as the leading departure from the former rule condemning antenuptial agreements contingent on divorce is *Posner v. Posner*, 233 So.2d 381 (Fla.1970), which recognized dilution of the state's opposition to divorce and held that public policy no longer justified a per se rejection of contracts settling alimony and property rights.[2] Two conditions were imposed by the *Posner* court, the first being that the agreement be fair between the parties, a subject to be examined in each case by the court, and the second that the agreement be applicable only as to conditions existing at the time the agreement was made. Subsequent cases which have followed the reasoning in the *Posner* case are: *Parniawski v. Parniawski*, 33 Conn. Sup. 44, 359 A.2d 719 (1976), where the court concluded that disposition of both property and alimony rights are proper subjects of an antenuptial agreement; *In re Marriage of Dawley*, 17 Cal.3d 342, 131 Cal. Rptr. 3, 551 P.2d 323 (1976), which disavowed a prior decision on agreements not contemplating lifelong marriage and held such agreements invalid only if the terms encourage or promote dissolution; *Flora v. Flora*, 337 N.E.2d 846 (Ind.App.1975), holding that antenuptial agreements contingent on divorce are not against the public policy of Indiana; *Eule v. Eule*, 24 Ill.App.3d 83, 320 N.E.2d 506 (1974), where the court stated the trend in the law is to uphold antenuptial agreements if fair.

In brief, a marked departure from the former position of unqualified opposition to antenuptial agreements determining prop-

2. The antenuptial agreement was later invalidated on grounds of nondisclosure. *Posner v. Posner*, 257 So.2d 530 (Fla.1972).

erty division and support upon dissolution of the marriage is evident. Clark, *Antenuptial Contracts, 50 Univ. of Colorado Law Review* 150 (1979). The authorities here noted are sufficient to conclude that it is no longer valid merely to assign "public policy" as a basis to reject such agreements if fairly reached between the parties and if adequately providing support for the spouse consistent with need and available resources. Appellant's contention that the subject agreement is unenforceable on grounds of general public policy is not supported by any significant current authority. Dardick, *Marital Contracts, 13 Univ. of Louisville School of Law, Journal of Family Law* 23, 37 (1973–74).

The subjects of property division and spousal maintenance with which antenuptial agreements are most intimately concerned are also treated in the Dissolution of Marriage Act. As to division of property, Section 452.330, and the grant of maintenance, Section 452.335, affirmative duties are created which were previously unknown but which now require the court to intervene in areas where the parties were formerly relegated to private agreements or subsequent litigation. Public interest in economic affairs incident to dissolution of the marriage finds expression in this Act which was designed to impose judicial control under specified guides. *Corder v. Corder*, 546 S.W.2d 798 (Mo.App.1977). It therefore is pertinent to ascertain how public policy as embodied in this Act circumscribes the latitude of parties to contract by antenuptial agreements on subjects of future property division and maintenance.

By reason of Section 452.325, where provision is made for contractual resolution of issues as to property disposition and maintenance under a separation agreement, public policy now favors such agreements and, indeed, the language of the statute expressly advocates this means to promote amicable settlements. As reflected in the Commissioners' Comment to Section 306 of the Uniform Marriage and Divorce Act at 488, "This section entirely reverses the older view that property settlement agreements are against public policy because they tend to promote divorce."

Freedom of contract in property settlement is not, however, unfettered but is subject to judicial review under Section 452.325–2 for conscionability. An unconscionable agreement must be renegotiated by the parties, or failing that, support, maintenance and property division will be adjudicated by the court. Conscionability is the same standard employed in commercial law, meaning protection against onesidedness, oppression or unfair surprise. Uniform Marriage and Divorce Act, Commissioners' Comment, *supra*.

Similar standards of judicial review of antenuptial agreements have been the rule in Missouri long predating the adoption of the Dissolution of Marriage Act. Such agreements will not be enforced unless entered into freely, fairly, knowingly, understandingly and in good faith with full disclosure. *Wilson v. Wilson*, 354 S.W.2d 532 (Mo.App.1962). These principles have certainly survived and are implicit in the statutory directives which now govern the trial courts in property division and maintenance awards in dissolution cases. When confronted with an antenuptial agreement purporting to settle issues of property division and maintenance ancillary to an action for dissolution of marriage, the court is therefore bound by that agreement only if the provisions are conscionable and if the agreement was fairly made. Subject to this qualification which affords protection to the unwary and ill-informed spouse, antenuptial agreements as such are neither contrary to public policy nor precluded by the Dissolution of Marriage Act.

■ In her second point, appellant contends that the agreement made on the eve of her marriage to respondent was, in fact, unfair and that she should not be held to its terms which precluded any recourse to future maintenance and foreclosed any claim to property of more than nominal value. Appellant's point indicates that the subject agreement is contended to be invalid because unfair either by standards applicable for review of antenuptial agreements prior

to enactment of the Dissolution of Marriage Act or by the measure of conscionability applicable to separation agreements under Section 452.325. The sole Missouri authority cited is *Wilson v. Wilson, supra,* a case which predated adoption of the Dissolution of Marriage Act. Independent research has disclosed no subsequent decision in this state directly in point and none treating the consequences upon such issues resulting from this legislation. For the reasons hereafter given, it is unnecessary in this opinion to confront the question of whether an antenuptial agreement fairly reached when made in anticipation of marriage may later be found to be unconscionable upon separation or dissolution of the marriage where intervening years, acquisition or loss of assets or changes in income or dependency have wrought significant economic change. No opinion is expressed on this feature of appellant's contention.[3]

In the review of circumstances attendant upon the preparation of the subject antenuptial agreement it is noted that appellant was prompted to enter into the agreement for the purpose of protecting an inheritance which her son by a former marriage expected to receive. While both parties evidently believed in good faith that such was in appellant's interest, the assumption was patently erroneous. As a consequence, appellant having no assets worthy of mention, the agreement operated solely to insulate respondent's property from division. This disparity of consideration weighs heavily in measuring the fairness of the agreement.

Other events which accompanied the preparation and signing of the antenuptial agreement bear significant indicia of overreaching. The agreement was prepared by respondent's attorney in private consultation with no opportunity for appellant to relate her version of such oral under-

standing as may have been reached. Appellant was herself not represented by counsel and, although some minimal option was available for her to seek independent advice, she received none. The completed document was given appellant to read a few days in advance, but she reviewed it only casually and had little comprehension of its import. Actual signing of the agreement was in the office of respondent's attorney two days before the wedding under the constraint of limited time for discussion and revision. Appellant's signature was obtained despite her objections to some terms which it was represented would be changed, a promise unfulfilled. Some assets owned by respondent were not fully disclosed and the actual value of assets listed was not given.

The circumstances of the parties as to premarital assets and income generating potential were such that what purported to be a mutual release of claims was in fact a unilateral release by appellant of future claims to support by respondent and to share in assets otherwise distributable as marital property. Under these facts, about which there was no significant dispute, the antenuptial agreement was fundamentally unfair under the standards of *Wilson v. Wilson, supra,* and would likewise fail to survive scrutiny for conscionability under Section 452.325 as a separation agreement. The judgment of the trial court finding the agreement a bar to appellant's claim for maintenance erroneously applies the law and must be reversed. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ As to division of property on dissolution of the marriage, the antenuptial agreement referred only to property owned, held or acquired by each of the parties and made no reference to property jointly acquired or

---

**3.** Cases from other jurisdictions considering this question are: *Unander v. Unander,* 265 Or. 102, 506 P.2d 719 (1973), holding that the antenuptial agreement will be enforced unless the spouse is deprived of support she cannot otherwise secure; *Eule v. Eule,* 24 Ill.App.3d 83, 320 N.E.2d 506 (1974), holding void an antenuptial agreement clause waiving alimony because an attempted avoidance of a husband's legal duty of support; *Connolly v. Connolly,* 270 N.W.2d 44 (S.D.1978), holding that public interest requires the duty of post-marriage dissolution support to be assessed as of the date of dissolution and declaring void any antenuptial contract to the contrary; *In re Marriage of Gudenkauf,* 204 N.W.2d 586 (Iowa 1973), holding that antenuptial agreements which prohibit alimony are contrary to public policy and void.

that generated by the mutual efforts of appellant and respondent. Irrespective of the previous conclusion that the agreement fails because unfair, its application to property acquired subsequent to the marriage and defined as marital property under Section 452.330–2 is inconclusive and ineffectual. In its decree the trial court made no identification of marital and nonmarital assets or their value, a requirement of Section 452.330. That some marital assets did exist is apparent from respondent's testimony that all crops for 1977 were still on hand, a situation no doubt also applicable to the livestock.

Property which respondent owned prior to the marriage is by the definition of Section 452.330–2 nonmarital property and would not be subject to division by the court irrespective of the validity of the antenuptial agreement. The court is, however, obligated to identify and divide the marital assets between the parties, again irrespective of the validity of the antenuptial agreement but in response to the direction of the statute.

For the reasons stated, this cause must be remanded to the trial court for entry of judgment on appellant's claim for an award of maintenance and for orders as to division of marital property. The paucity of evidence in the present record concerning appellant's expenses after separation, respondent's income and expenses and the identity and value of marital and nonmarital assets indicates the necessity for supplementation of the somewhat meager facts upon which the trial court was previously obligated to enter judgment.

Reversed and remanded.

All concur.