Janice S. WHITENTON,
Plaintiff-Appellant,

v.

Philip G. WHITENTON,
Defendant-Respondent.

No. 45813.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 30, 1983.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
Oct. 12, 1983.

Patricia Riehl, Hollingsworth & Kramers, Hillsboro, for plaintiff-appellant.

Robert H. Batts, Stephen G. Bell, St. Louis, for defendant-respondent.

GAERTNER, Judge.

Appellant (hereinafter wife) appeals from a decree dissolving the marriage of wife and respondent (hereinafter husband). Wife appeals only the trial court's distribution of certain property and its denial of attorney fees.

This appeal concerns the dissolution decree of the parties' second marriage. Husband and wife were married for the first time on February 2, 1973. That marriage was dissolved on May 16, 1979 and is not at issue here. The separation agreement in the first divorce provided for payment of $49,500 by wife to husband for his interest in the marital home at 1576 Park Ridge, Arnold, Missouri. Wife received in exchange from husband a quitclaim deed. Wife borrowed $20,000 from Mark Twain Bank and $29,500 from Nu-Way Construction Co., wife's employer, to purchase hus-

band's interest in the marital home. These debts, which were secured by the marital home, remained as debts of the wife at the time of the second marriage to husband on December 21, 1979.

In October of 1979 the parties here were considering remarriage. The parties opened a joint bank account with United Missouri Bank of Jefferson County at Arnold, Missouri on October 9, 1979. The account was opened with a $1,000 deposit, the source being unclear from the evidence. This account was the parties' only joint bank account.

In addition to considering remarriage, the parties in October, 1979, and thereafter had several discussions concerning a pre-nuptial agreement. The pre-nuptial agreement, both parties believed, would avoid a property dispute if the remarriage ended in divorce. Pursuant to these discussions, wife typed a letter to an attorney expressing both parties' intentions to make a pre-nuptial agreement, the terms of the agreement, and a list of the assets and liabilities of both husband and wife. The letter was dated October 10, 1979, and expressed both parties' intentions as of that date. The letter, however, was not signed by either husband or wife, and was never mailed to the attorney.

The morning of their remarriage, December 21, 1979, husband and wife went to the county office of the Recorder of Deeds to get a marriage license. While at the Recorder of Deeds office, the parties executed their pre-nuptial agreement and had Richard King, the Recorder of Deeds, sign as a witness. The agreement was then placed in an envelope and, unfortunately, has been lost. Both parties have searched for it in vain.

Both parties are in accord that there was a pre-nuptial agreement. The dispute at trial focused on the actual terms of the agreement. Wife testified that the agreement consisted of a Xeroxed copy of the personal property distribution from the parties' first divorce decree along with a handwritten notation "We agree that the above items will be returned to the owners in the case of divorce." Wife testified that the agreement had "nothing whatsoever" to do with money.

Husband testified that at the Recorder of Deeds office, wife asked Mr. King for a blank piece of paper upon which she wrote out the pre-nuptial agreement. The parties and Mr. King then signed it. Husband testified that the agreement stated:

> "All monies brought forward by both parties shall always be theirs in the event of a future divorce, including the $49,000 Philip G. Whitenton paid on the residence at 1576 Park Ridge, with the condition that Mrs. Janice S. Whitenton always has the option to buy my interest out on the house there on Park Ridge."

Immediately after the execution of the pre-nuptial agreement, the parties were married. Wife then returned home and husband went to work. Sometime during the day two deposits were made to the parties' joint bank account in the amounts of $6,300 and $54,851.75. Husband testified that the $6,300 came from his personal checking account and the $54,851.75 consisted of the proceeds from the earlier sale of a house he owned prior to the parties' remarriage. Wife testified that she "didn't recall" if any part of the deposits were made from her funds.

Within a few days after the marriage, wife drew three checks on the parties' joint bank account to pay off all encumbrances on the Park Ridge house. These checks totalled $53,881.83 and were in the following amounts and payees: $29,500 payable to Nu-Way Construction Co., $4,450 payable to Clarence Clamert, and $19,931.83 payable to Mark Twain Bank.

Several days after the parties remarried, a $10,000 Certificate of Deposit from Lafayette Federal Savings and Loan Association was purchased. The C.D. was in the names of husband and wife "as trustees for Lori Mathews," wife's daughter. Husband testified that $4,450 of the investment came from a joint saving account with his son, Philip J. Whitenton, and that the remaining $5,550 came from the parties' joint bank

account. Husband testified that the source of the $5,500 was solely from his deposits on December 21, 1979 of $6,300 and $54,851.75. Wife testified that the parties "have had C.D.'s ever since we were married the first time" and that this C.D. "has been in and out of the bank so many times I couldn't tell you" the source of the funds to make the investment.

The trial court entered its order of dissolution on April 6, 1982. In its decree, the court made the following findings: 1) that on December 21, 1979, and prior to the marriage, husband and wife executed a written, binding pre-nuptial agreement, essentially providing that funds to be advanced or payments to be made by husband in the discharge of certain of wife's indebtedness be repaid to husband in the event of a divorce between the parties; 2) that acting under the terms of the pre-nuptial agreement, the indebtedness of the wife was paid out of funds derived solely from husband in the amount of $53,881.83; and 3) that husband is entitled to the repayment thereof since wife's indebtedness was paid solely from husband's separate funds.

The trial court additionally found that the certificate of deposit at issue here is the separate property of the husband, or alternatively, the property of husband and his son, Philip J. Whitenton.

■ Our review of a court-tried dissolution case is governed by Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Accordingly, the decree of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d at 32; *B.S.H. v. J.J.H.*, 613 S.W.2d 453 (Mo.App.1981).

On appeal, wife attacks the trial court's decree concerning the pre-nuptial agreement in two ways. Initially wife contends that the pre-nuptial agreement was, as a matter of law, too vague and ambiguous to be enforceable or, in the alternative, evidence concerning the terms of the agree-

ment was not sufficiently clear and convincing. We disagree.

■ Neither party disputes the fact that a pre-nuptial agreement was executed on the morning of their remarriage at the Recorder of Deeds office. Additionally, neither party disputes the fact that the agreement was subsequently lost. The controversy at trial, therefore, centered on each party's recollection of the terms of the agreement. Both parties testified as to their understanding of the agreement. The trial court determined the issue by accepting the husband's version of the terms of the pre-nuptial agreement. It is the prerogative of the trial court to determine the credibility of the parties and to accept or reject all, part or none of the testimony. *Trunko v. Trunko*, 642 S.W.2d 673 (Mo.App. 1982). On review we must give due regard to the trial court in judging credibility. Rule 73.01(c)(2).

■ Husband testified at trial that the pre-nuptial agreement stated:

"All monies brought forward by both parties shall always be theirs in the event of a future divorce, including the $49,000 Philip G. Whitenton paid on the residence at 1576 Park Ridge, with the condition that Mrs. Janice S. Whitenton always has the option to buy my interest out on the house there on Park Ridge."

This testimony alone is clear and convincing evidence as to the contents of the agreement. It is also quite similar to the terms of the proposed agreement as set forth in the unsigned and unmailed letter to an attorney type-written by the wife. Moreover, this testimony demonstrates that the agreement is not too vague and ambiguous to be enforceable. The agreement simply states that all monies brought into the remarriage shall remain the separate property of each spouse *including* the money husband paid to remove the encumbrances on wife's house. We fail to see how this agreement is vague or ambiguous.

Wife's second attack on the decree concerning the pre-nuptial agreement is that the agreement was executed under duress, that it smacked of overreaching and unfair-

ness, and that it was unconscionable. Wife contends that the execution of the pre-nuptial agreement at the time of the purchase of the marriage license produced "a high pressure situation." Wife further contends that the agreement totally benefitted husband, that he was to receive his money back but "no similar provision was made for the wife," and that the agreement covered only one item—the eventual return to husband of the approximately $54,000 he used to pay off the encumbrances on wife's house. The evidence, however, simply belies these arguments.

Under husband's version of the agreement, which the trial court accepted as true, wife was the person who actually handwrote the pre-nuptial agreement at the Recorder of Deeds office. There was no evidence that wife was under any duress at that time. Indeed, her own testimony was that she actively participated in the creation of the pre-nuptial agreement.

Husband's version of the agreement was that "*all* monies brought forward by *both parties* shall always be *theirs* in the event of a future divorce...." We find it difficult to see how wife can construe these words to mean that only the husband was to benefit. The plain meaning of the words demonstrates an intent that all monies brought into the marriage by *either* party shall retain its separate property status upon divorce.

We also cannot accept wife's contention that she did not have sufficient knowledge of the nature, extent and amount of husband's property to enter into the pre-nuptial agreement with full understanding merely seven months earlier at the time of their first dissolution. Parties here agreed to a settlement disposing of all their property. The evidence at trial showed that there was no significant change in the financial positions of the parties during the interim seven months before the pre-nuptial agreement, other than the $54,000 which husband realized upon the sale of a house, of which wife was fully aware. Wife makes much of the fact that there was not full disclosure of assets since husband did not attach a list of

personal property with the pre-nuptial agreement. However, wife does not seriously assert she was not fully aware of husband's assets at the time of the agreement. Indeed, the evidence proves otherwise.

■ On review, a pre-nuptial agreement will not be enforced unless it was entered into freely, fairly, knowingly, understandingly and in good faith and with full disclosure. *Ferry v. Ferry,* 586 S.W.2d 782 (Mo.App.1979); *Wilson v. Wilson,* 354 S.W.2d 532 (Mo.App.1962). The evidence is manifest that the pre-nuptial agreement at issue here fulfills this standard and was properly enforced.

■ Wife's final contention on this point is that the Statute of Frauds, § 432.-010, RSMo 1978, bars the enforcement of the pre-nuptial agreement because it must be in writing and this writing was not before the court since it was lost. This argument misstates the law. Where the Statute of Frauds requires a contract to be in writing and the written document has been lost, parol evidence of its contents is admissible. *Brinkman v. Luhrs,* 60 Mo.App. 512 (1895); *Davis v. Kroyden,* 60 Mo.App. 441 (1895). Such evidence as to the terms and provisions of the written document must be clear and convincing. *Welsh v. Veasley,* 286 Mo. 93, 227 S.W. 58 (1920). After reviewing the transcript of the record in this case we find no reason to disturb the finding of the trial court that the evidence met this standard. There was no dispute that a written contract had been signed by both parties. Husband's testimony concerning the agreement was positive, unequivocal and substantially corroborated by the unmailed letter typewritten by the wife. Her testimony regarding the content of the agreement can best be described as evasive and indecisive.

■ Furthermore, even if the Statute of Frauds were to prohibit enforcement of the lost contract, the result would be the same. The trial court found the Park Ridge house to be wife's separate property and also that the $54,000 used to remove

wife's indebtedness on the house came from husband's separate property. These findings were amply supported by the evidence. Separate property of a spouse owned before the marriage does not become marital property merely because a mortgage debt encumbering the property is reduced by application of funds which are marital property or are separate property of the other spouse. In such circumstances, a charge may be imposed on the separate property to the extent that the separate funds of the other spouse, or his or her share of marital funds, have been expended to reduce the debt or enhance the value of the asset in question. *Ravenscroft v. Ravenscroft,* 585 S.W.2d 270, 272 (Mo.App.1979). Thus, even in the absence of a pre-nuptial agreement, the trial court's finding—

> "Having paid the indebtedness of petitioner solely out of his, respondent's, funds, respondent is entitled to the repayment thereof in the total sum of $53,-881.83, together with interest thereon at the legal rate from and after the date of this decree, and judgment is entered for such amount."

was proper.

Wife also attacks the trial court's decree concerning the certificate of deposit. Wife contends that since the C.D. was in the names of husband and wife "as trustees of Lori Mathews," Lori was a necessary third party to the dissolution action. Wife asserts trial court error in failing to adjudicate Lori's claim to the C.D. We find no error.

■■■ Husband testified that the *sole* purpose of putting the C.D. in the names of the parties "as trustee for Lori Mathews" was to avoid the interest earned from being taxed to the parties. Wife did not testify on this point. Husband, however, was quite clear the C.D. in that form was an attempted tax shelter and nothing more. He testified that the C.D. was not a gift to Lori Mathews in any way.

On the basis of the evidence adduced herein, Lori had no vested interest in the C.D. during the lifetime of the trustees, but rather her interest, if any, was tentative and defeasible. *Blue Valley Federal S & L Ass'n v. Burrus,* 617 S.W.2d 111, 113 (Mo. App.1981). As noted therein, the tentative trust created by the type of account described by the evidence herein reserves to the settlor practically complete control over the deposit as long as he lives. Further, under § 369.179(2) RSMo 1982, the trustees, husband and wife would be authorized to withdraw the funds represented by the C.D. in whole or in part at any time. As between them, the trial court determined that this interest in the C.D. was the separate property of the husband or, alternatively, the property of the husband and his son. There was substantial evidence in the record to support this determination and none to contradict it.

In arguing that this case must be remanded for further proceedings in which Lori is a necessary party, wife cites to *Ravenscroft v. Ravenscroft,* 585 S.W.2d 270 (Mo.App.1979) and *In Re Marriage of Schulz,* 583 S.W.2d 735 (Mo.App.1979). These cases are inapposite to the issue presented here. *Ravenscroft* merely held that nominal title owners of real estate were necessary parties before a judgment ordering conveyance of the real estate could be enforced. *Schulz* was remanded because of the failure of the trial court to designate real estate as marital or non-marital property. These cases do not support wife's contention that Lori was a necessary party to this dissolution action. On the contrary, should Lori claim any vested interest in the C.D. she may and should assert such interest in a separate action, as was apparently the situation in *Schulz,* 583 S.W.2d at 742.[1]

Wife's final point on appeal is that the trial court erred in denying wife attorney's fees. In its decree, the trial court stated "the extensive testimony and evidence presented in this cause was occasioned by

---

1. The judgment in this case, in which Lori was not a party does not purport to preclude whatever claim she may wish to assert. Rather, it

determines only the respective rights of the parties of this action.

[wife] in concealing or refusing to acknowledge the contents of the pre-nuptial agreement, and each of the parties hereby is ordered to pay the remainder of their respective attorney's fees." Wife contends that this denial amounted to a "punishment" for wife's failure to acknowledge the pre-nuptial agreement and, thus, was an abuse of discretion. We disagree.

Although the trial court decree is susceptible to the interpretation asserted by wife, this interpretation is not compelling. In determining whether to award reasonable attorney's fees in a dissolution action, a trial court must consider all relevant factors including the financial resources of the parties. § 452.355, RSMo 1978; *Bray v. Bray,* 629 S.W.2d 658 (Mo. App.1982). Moreover, a trial court need not award the full amount of attorney's fees but may award only a reasonable amount. *Eastes v. Eastes,* 590 S.W.2d 405 (Mo.App. 1979). Pursuant to a pre-trial order, husband paid $1,250 toward wife's attorney's fees along with $323.40 in costs incurred for depositions. The trial court has broad discretion in the award of attorneys' fees and litigation expenses. *In Re Marriage of Pitluck,* 616 S.W.2d 861 (Mo.App.1981). Given the evidence below of wife's financial condition and lack of need, we cannot say that the trial court abused its discretion in failing to award wife an additional amount for attorney's fees. *Nowels v. Nowels,* 637 S.W.2d 163 (Mo.App.1982). Wife's point has no merit.

Husband filed a cross appeal in this action. In his Points Relied On, husband states:

"During proceedings for Dissolution of Marriage, it was proper to file a counterclaim for damages based upon willful concealment of a pre-nuptial agreement.

A.  The counterclaim as filed was a compulsory counterclaim.

B.  The counterclaim as filed was a compulsory counterclaim maturing during trial which should have been heard by the trial court."

It is apparent that husband's points do not set forth any *action* or *ruling* of the trial court as required by Rule 84.04(d). For this reason, husband's cross-appeal is dismissed. Rule 84.08; *See Thummel v. King,* 570 S.W.2d 679 (Mo.banc 1978).

The judgment and decree of the trial court is affirmed.

DOWD, C.J., and SNYDER, P.J., concur.