In re the Marriage of Lois GOULD,
Plaintiff/Respondent,

v.

Boaz RAFAELI, Defendant/Appellant.

No. 59601.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 17, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 27, 1992.

Application to Transfer Denied
Feb. 25, 1992.

Mark D. Hirschfeld, Clayton, for defendant/appellant.

Martha L. Goodloe, St. Louis, for plaintiff/respondent.

GRIMM, Presiding Judge.

In this dissolution case, husband appeals from a partial summary judgment as well as the final dissolution decree upholding the validity of an antenuptial agreement. Pursuant to the agreement, husband was denied maintenance, attorney fees, and certain property. We affirm.

On appeal, husband contends the trial court erred because (1) the financial disparity of the parties and economic dependence of husband on wife showed the agreement to be unconscionable, and (2) the evidence was insufficient to show that wife had made full disclosure of the nature and extent of her property.

Husband and wife met in Israel in 1979. Wife, a long time resident of St. Louis County, was a tourist. Husband, an Israeli citizen, worked as a taxi driver. They were married in St. Louis on April 23, 1982.

Before the marriage, the parties entered into an antenuptial agreement. The validity of the antenuptial agreement was upheld in a partial summary judgment. In addition, in the dissolution decree, the agreement was found to be valid and enforceable.

I.  Partial Summary Judgment

Husband argues the antenuptial agreement is unconscionable and not binding under § 452.344 [1] because of the parties' economic disparity. He asserts the trial court erred in granting a partial summary judgment finding the antenuptial agreement valid and binding.

We first observe that the term "judgment" in "partial summary judgment" is a misnomer. The term is a misnomer because the determination (1) is interlocutory only; (2) has no res judicata effect; (3) is

---

1. All statutory references are to RSMo 1986, unless otherwise specified.

subject to revision at any time before entry of a final judgment, *Acha v. Beame,*[2] 570 F.2d 57, 63 (2nd Cir.1978); and (4) is not reviewable by appeal or enforceable by execution. *State ex rel. Turner v. Sloan,* 595 S.W.2d 778, 783 (Mo.App.W.D.1980). As Professor Moore suggests, "a more accurate term would be an interlocutory summary adjudication." J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.20[4] (2d ed. 1988). *See also* Rule 74.04(d).

"The purpose of partial summary adjudication procedure of Rule 74.04 is to expedite a litigation which cannot otherwise be fully determined by that method." *Turner,* 595 S.W.2d at 783. Whether the partial summary adjudication here served to expedite this litigation is questionable.

Be that as it may, the question before us is whether the antenuptial agreement is unconscionable because of the parties' economic disparity. A recitation of the facts is necessary as background for resolution of this question.

In late March or early April, 1982, husband and wife went to wife's attorney. At that time, the necessity for an antenuptial agreement was raised by wife's attorney. The attorney explained that the purpose of the agreement was in the case of death or divorce, husband "would not have any claim whatsoever by way of alimony or whatever against [wife], and vice versa."

The attorney indicated he would draft an agreement. The attorney also suggested that husband should have independent counsel, which was arranged. On April 6, 1982, wife's attorney sent husband's attorney a draft copy of the agreement.

Among other things, the agreement provided that after the marriage neither party would acquire any right, title, or interest in or to any property of the other (owned or after acquired). Further, each party could manage or dispose of that party's own property as if unmarried. The agreement also provided that each party waived any right to maintenance or support of any kind, as well as attorney fees connected with the party's divorce suit.

Wife's attorney testified that he sent the agreement and a list of the parties' assets to husband's attorney. In addition, he sent (1) information from a trust company concerning trusts in which wife was a beneficiary; (2) an appraisal of jewelry; and (3) a copy of wife's deceased husband's will. The list of assets disclosed husband had $1,000.00 cash and wife had personal and real property valued at approximately $320,000.00. In addition, wife was the income beneficiary of trusts created by deceased husband's will; the trusts' assets were approximately $1.3 million.

Husband met with his attorney and discussed the agreement. Husband took the agreement home. His testimony was confusing: he said he "didn't read it," as well as he "couldn't read it."

Wife's present counsel attempted to depose the attorney who advised husband concerning the antenuptial agreement. Husband's counsel at the deposition advised that attorney, "[husband] is not waiving any way his attorney-client privilege with you. I'm therefore requesting you not to violate that attorney-client privilege." As a result, husband's attorney refused to answer any questions concerning husband or the agreement.

The agreement is dated April 20, 1982. It contains acknowledgements, notarized by husband's attorney, that each party executed the agreement as a free act and deed. In addition, attached to the agreement is the statement of husband's attorney in which he said

I have fully advised [husband] of his property rights and of the legal significance of the foregoing Agreement; and that [husband] has acknowledged his full and complete understanding of the legal consequences and of the terms and provisions of the foregoing Agreement and fully and voluntarily executed said Agreement in my presence.

---

**2.** Rule 56(d) of the Federal Rules of Civil Procedure is the source for Rule 74.04(d); they are identical. Federal decisions construing Rule 56(d) are persuasive in applying Rule 74.04(d). *See In re Estate of Caldwell,* 766 S.W.2d 464, 466 (Mo.App.E.D.1989).

Wife's attorney signed a similar statement concerning wife.

In July, 1988, after six years of marriage, the parties separated. Following the filing of the petition for dissolution on July 13, 1988, wife filed a motion for partial summary judgment. Among the documents wife relied upon were Requests for Admissions submitted to husband. In his response to those requests, husband admitted (1) entering into the antenuptial agreement, (2) consulting with an attorney, (3) being "fully advised" of his property rights prior to execution, (4) being "fully advised" of the document's legal significance, (5) that he acknowledged to his attorney "his full and complete understanding of the legal consequences" of the agreement, (6) that he acknowledged to his attorney "his full and complete understanding of the terms and provisions" of the agreement, and (7) that he voluntarily executed the agreement. Husband did not file any affidavits, documents, or memorandum in opposition to the motion. A partial summary judgment was granted.

That partial summary judgment was appealed. This court found the judgment was not appealable and dismissed the appeal. *Gould v. Rafaeli*, 804 S.W.2d 758 (Mo.App.E.D.1990).

Thereafter, the dissolution hearing was held. Only the parties testified. The trial court precluded husband from presenting any evidence concerning the antenuptial agreement. Husband did not make any offers of proof concerning the agreement or the circumstances surrounding it.

The trial court granted a decree of dissolution. It found the antenuptial agreement "is valid and enforceable and both parties are bound by its terms." The court found husband had waived and relinquished his rights to maintenance and attorney fees, as well as to property listed in the schedule attached to the agreement. The court divided three items of marital property between the parties.

Missouri, like the majority of states, permits antenuptial agreements which include contemplation of dissolution of the marriage. *Ferry v. Ferry*, 586 S.W.2d 782, 786 (Mo.App.W.D.1979); *see Whitenton v. Whitenton*, 659 S.W.2d 542 (Mo.App.E.D. 1983); *see also* Annot: Modern Status of Views as to Validity of Premarital Agreements Contemplating Divorce or Separation, 53 ALR 4th 22 (1987). By statute, "marital property" in a dissolution proceeding does not include property "excluded by valid agreement of the parties." § 452.-330.2(4).[3]

Husband, in seeking maintenance and attorney fees, relies on § 452.325, pertaining to separation agreements. He points out that under this statute, a court can approve a separation agreement only if the court finds its terms are not unconscionable. He then seeks to apply the unconscionable standard applicable to separation agreements to this antenuptial agreement, relying on *Ferry* and *Hosmer v. Hosmer*, 611 S.W.2d 32 (Mo.App.S.D.1980). Neither are applicable or controlling.

We recognize some language in *Ferry* would seem to support husband's position. For example, a court is bound by an antenuptial agreement "only if the provisions are conscionable and if the agreement was fairly made." *Ferry*, 586 S.W.2d at 786. However, immediately following this statement, the court said, "Subject to this qualification which affords protection to *the unwary and ill-informed spouse*, ante-nuptial agreements as such are neither contrary to public policy nor precluded by the Dissolution of Marriage Act." *Id.* (emphasis added). Here, nothing indicates husband was an "unwary and ill-informed spouse."

In addition, in *Ferry*, the spouse challenging the antenuptial agreement was not represented by counsel. Further, (1) that spouse received the agreement only two days before the wedding, (2) the challenging spouse's signature was obtained despite her objections to some of the terms, (3) some assets were not fully disclosed,

---

**3.** Section 452.330.2(4) was amended in 1988 to require the agreement to be a "valid written agreement." § 452.330.2(4), RSMo Cum.Supp. 1990.

and (4) the actual value of assets listed was not given. *Ferry,* 586 S.W.2d at 787. Here, husband had independent counsel, received the agreement approximately two weeks before the wedding, did not object to any of the terms, and all assets were listed with specific values shown. *See* Annot: Premarital Agreement–Execution, 53 A.L.R. 4th 85 (1987).

We turn to *Hosmer. Hosmer* involved an antenuptial agreement. However, it concerned a decedent's estate, rather than a dissolution proceeding. *Hosmer,* 611 S.W.2d at 34. Thus, the *Hosmer* court examined the antenuptial agreement to determine whether it complied with § 474.120 for waiver of inheritance and statutory rights.

That statute requires three things: (1) full disclosure of the nature and extent of the rights of inheritance and any other statutory rights of a surviving spouse, (2) full disclosure of the nature and extent of all property interests of the parties, and (3) "fair consideration under all the circumstances." As stated in *Hosmer,* the statutory rules "ar. unique and are distinct from the requirements for the execution of an ordinary contract." *Hosmer,* 611 S.W.2d at 35. Here, no special statutory rules are applicable to the antenuptial agreement in this dissolution proceeding.

In *Whitenton,* this court said an antenuptial agreement will be enforced if "it was entered into freely, fairly, knowingly, understandingly and in good faith and with full disclosure." *Whitenton,* 659 S.W.2d at 547. The antenuptial agreement here fulfills this standard. The circumstances surrounding the execution of this agreement were fair and the agreement was properly enforced. Point denied.

## II. Divorce Decree

■ Husband also contends there was insufficient evidence to support the trial court's finding that wife had fully disclosed the nature and extent of her property. Our review is limited. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The antenuptial agreement was received in evidence. Paragraph 3 thereof provides that each party "represents and warrants that said Schedule [listing the party's assets] is true and accurate." That paragraph further provides that a party "does not hold, own or possess any other property ... except minor personal effects." This evidence, together with husband's responses to Requests for Admissions previously set forth, is sufficient evidence to support the trial court's finding. Point denied.

The judgment of the trial court is affirmed.

SATZ, J., concurs.
CRANDALL, J., concurs.