Ruby Lee AMICK, Appellant,

v.

Eugene HORTON and Dale E. Amick, Respondents.

No. 13582.

Missouri Court of Appeals, Southern District, Division Three.

April 15, 1985.

Daniel E. Monaghan, Kansas City, for appellant.

Patrick O. Freeman, Jr., Thayer, for respondents.

CROW, Presiding Judge.

Ruby Lee Amick ("plaintiff") appeals from an order dismissing her cause of action with prejudice. The order was entered because plaintiff failed to answer interrogatories served on her by the two defendants: her son, Dale E. Amick, and her son-in-law, Eugene Horton.

The suit began February 16, 1982, when Columbia Mutual Insurance Company, formerly Midland Mutual Insurance Company ("the insurer"), filed a petition against the two defendants, alleging that on September 28, 1981, a dwelling owned by plaintiff and insured by the insurer against loss by fire was "wholly and totally destroyed by fire." The petition, filed by attorney L. Dwayne Hackworth, pleaded that the fire occurred when defendant Horton parked a pickup truck owned by defendant Amick close to plaintiff's dwelling and attempted to charge the pickup's battery with a charger connected to a power source in the dwelling. According to the petition, the pickup had a defect in its wiring which caused the pickup to catch fire. That fire then ignited the dwelling. The petition charged both defendants with negligence in that they "knew the wiring in said pickup truck was faulty but failed to take necessary precautions to prevent such a fire."

The petition explained that by reason of the loss, the insurer paid plaintiff the policy limits of $18,000 on the dwelling and $4,000 on the contents. The insurer, claiming it "became subrogated to and was assigned by" plaintiff all of her rights against the defendants, sought judgment for $22,000.

Plaintiff was not originally a party to the suit, but on July 2, 1982, the insurer, per attorney Hackworth, filed a motion seeking leave to join plaintiff as a party because "she claims an interest relating to the subject of this action and her joinder is necessary to allow complete relief to be given in this matter."

Leave was granted, and a second amended petition, consisting of two counts, was filed. In Count I, the insurer reiterated its claim against both defendants. In Count II, plaintiff, alleging she had sustained $34,000 damages because of the fire, prayed for judgment in that amount against both defendants.

On September 22, 1982, the defendants served written interrogatories on plaintiff. Plaintiff neither answered nor objected to the interrogatories within the 20 days allowed by Rule 57.01(a), Missouri Rules of Civil Procedure (13th ed. 1982).

On April 13, 1983, attorney Hackworth mailed to defendants' attorney a notice stating that on May 2, 1983, he would appear in court and "call up the above styled cause and request a trial setting at the earliest possible date."

On April 18, 1983, defendants filed a "Motion Opposing Trial Setting," asserting that because of plaintiff's failure and refusal to answer the interrogatories, discovery had not been completed and could not be completed until the interrogatories were answered. That same day (April 18, 1983) defendants also filed a "Motion for Sanctions," asking the court to order plaintiff to answer the interrogatories "within a

time certain, and failing to do so, to enter appropriate relief under Rule 61."

On May 2, 1983, the trial court entered the following order:

"Motion For Sanctions sustained; Plaintiff ordered to answer interrogatories within 20 days or petition dismissed without further order or notice; clerk to notify counsel. Motion opposing trial setting sustained."

On May 12, 1983, the trial court received from attorney Hackworth a motion for leave to withdraw as counsel for plaintiff. The motion stated that plaintiff "has requested that I withdraw my appearance as her attorney."

The next entry on the trial court's docket sheet is dated June 20, 1983. It states:

"Motion To Withdraw sustained; Order filed; Clerk to notify Plaintiff Ruby Amick."

The "Order" referred to in the entry states:

"On May 2, 1983, in response to defendant's [sic] Motion For Sanctions, the Court made the following docket entry:

'Motion For Sanctions sustained; plaintiff ordered to answer interrogatories within 20 days or petition dismissed without further order or notice; clerk to notify counsel. Motion Opposing Trial Setting Sustained.'

It is further ordered by the Court that the Clerk of the Court mail a copy of this order to Plaintiff Ruby Lee Amick, at her last known address to-wit: Route 1, Box 127, Alton, Missouri, 65606.

It is further ordered that if said Ruby Lee Amick does not respond to the order of May 2, 1983 by the 5 day of July 1983, the petition herein will be dismissed without further order or notice."

A docket entry dated June 21, 1983, states: "Copy of Order mailed to Ruby Amick."

On June 29, 1983, the following "Stipulation for Dismissal with Prejudice" was filed:

"Comes now Plaintiff Midland Mutual Insurance Company (now Columbia Mu-

tual Casualty Insurance Company), and its attorney, L. Dwayne Hackworth of Piedmont, Missouri, and, also comes Defendants Eugene Horton and Dale E. Amick, and by their attorney, Patrick O. Freeman, Jr., and the parties and their counsel hereby stipulate and agree that the plaintiff's claim against defendants shall be dismissed with prejudice at the cost of the defendants."

The stipulation bore the signature of an official of the insurer, the signature of attorney Hackworth, representing the insurer, and the signature of attorney Freeman, representing the two defendants.

The next activity in the case occurred when the trial court entered the following "Order of Dismissal":

"COMES NOW on this 5th day of July, 1983, Plaintiff Midland Mutual Insurance Company (now Columbia Mutual Casualty Insurance Company), in person and by its attorney L. Dwayne Hackworth, and Defendants Eugene Horton and Dale E. Amick, by their attorney Patrick O. Freeman, Jr., and submit to this Court Stipulation For Dismissal With Prejudice.

The Court finds that said Stipulation For Dismissal With Prejudice is not unconscionable and that said Stipulation is approved as submitted and that said cause be dismissed with prejudice at the costs of defendant [sic]."

Three days later, on July 8, 1983, plaintiff filed answers to defendants' interrogatories.

On July 20, 1983, defendants filed a motion pointing out that plaintiff's answers had been filed "three days late." Defendants prayed that the answers "be stricken pursuant to Supreme Court Rule 61 and that plaintiff's petition be dismissed."

On August 4, 1983, plaintiff, through her present attorney, filed a motion praying "that the Dismissal with Prejudice entered on July 5, 1983 be set aside and that this cause be reinstated." As grounds therefor, plaintiff alleged that at the time of the dismissal, she "was without counsel and did not understand the legal consequences

of not filing timely her answers to said Interrogatories." It is evident from this motion that plaintiff (or her attorney) feared either that the order of July 5, 1983, had dismissed plaintiff's claim along with the insurer's claim, or that the trial court's order of June 20, 1983, became self-executing when plaintiff failed to file her answers to interrogatories by July 5.

The trial court held a hearing on plaintiff's motion the day it was filed. Plaintiff, the lone witness, acknowledged that in April, 1983, she became "somewhat disenchanted" with attorney Hackworth's representation and asked him to withdraw. She testified she did not remember whether she received a copy of his motion to withdraw, but she did recall a letter from him stating that if she got another attorney the records would be in Hackworth's office.

Plaintiff denied knowing that the court had allowed Hackworth to withdraw on June 20, 1983, and she did not remember whether she received any notice from the court or Hackworth that he had withdrawn. She admitted, however, that by that time she had decided to change attorneys and that she had talked to a "Mr. Brown," who said he would introduce her to an attorney.

Asked when she first became aware she was not represented by Hackworth, plaintiff replied: "I don't remember when it was. I guess when I—I got—I don't know. I'm all confused, this whole crap."

Asked whether she was aware that the court had ordered her cause of action dismissed if her answers to the interrogatories were not filed by July 5, 1983, plaintiff answered: "Well, I knew something had to be filed. I didn't know what they was talking about."

On cross-examination, plaintiff was asked when she fired Hackworth. She replied: "I don't know. It was sometime in—in May. I don't know what date it was."

Plaintiff did not remember when she first saw defendants' interrogatories, and she denied that Hackworth told her there

were some questions she had to answer. She explained: "All he was concerned about was how much stuff depreciated. That's all he had on his mind."

Asked when and where she signed her answers to the interrogatories, plaintiff stated: "Well, I don't know where I signed it. It's my signature. I signed some in the courthouse with Noel Gene Johnson,[1] but I don't know if that's them or whatever."

Plaintiff insisted she did not know when she first saw the answers. She was likewise unable to recall the length of the interval between the time she fired Hackworth and the time she hired her present attorney.

At the conclusion of the hearing on August 4, 1983, the trial court ordered the judgment of July 5, 1983, "reopened for the purpose of taking additional evidence" on plaintiff's motion to set aside the dismissal. It appears from this that the trial court considered the order of July 5 as a dismissal of plaintiff's claim.

Thereafter, at the instance of defendants, a deposition was taken of attorney Hackworth. He testified he received a copy of defendants' interrogatories in September, 1982. On September 27, 1982, he mailed a copy of the interrogatories to plaintiff, along with a letter instructing plaintiff to answer them. The answers were to be returned to Hackworth's office for review.

On February 4, 1983, having received no answers from plaintiff, Hackworth wrote her a letter pointing out that the interrogatories had to be answered before he could proceed with the suit. The letter was accompanied by another copy of the interrogatories.

On February 11, 1983, plaintiff telephoned Hackworth's office, advising his secretary that she would come in "one day next week" and bring the papers Hackworth needed.

On March 23, 1983, Hackworth talked to plaintiff by telephone. That conversation

1. Clerk of the Circuit Court of Oregon County.

concerned the need for receipts evidencing the purchase of items destroyed in the fire.

On April 21, 1983, Hackworth advised plaintiff by letter that the defendants had filed a motion to dismiss plaintiff's action for failure to answer the interrogatories. Hackworth was obviously referring to defendants' motion for sanctions filed April 18, 1983. Hackworth's letter stated: "It is absolutely necessary that you make an appointment with my secretary immediately to come in and bring all receipts and have your Answers to the Interrogatories. If we do not do something within the next few days, you may lose any claim you have with the insurance company." [2]

Hackworth met with plaintiff and her daughter at Hackworth's office on April 25, 1983. Answers to the interrogatories were prepared and assembled for typing.

On May 5, 1983, the typewritten answers were mailed from Hackworth's office to plaintiff. The answers were accompanied by a letter from Hackworth advising plaintiff to sign the answers and return them to him in a stamped envelope supplied for that purpose. The letter added: "I would appreciate your immediately putting this document back in the mail to me as I have received notice this date from the Court that unless the same is filed within twenty days, your Petition will be dismissed." Hackworth was referring, of course, to the trial court's order of May 2, 1983, which directed plaintiff to answer the interrogatories within 20 days.

Plaintiff never returned the answers to Hackworth's office.

A few days after mailing plaintiff the typewritten answers, Hackworth received from plaintiff a "written memorandum" dated "5/5/83," which informed him that plaintiff no longer wished him to serve as her attorney.

That triggered Hackworth's motion to withdraw, which he prepared and mailed May 10, 1983. Hackworth sent plaintiff a copy, accompanied by a letter reminding her that the interrogatory answers he had sent her May 5, 1983, needed to be signed and filed on or before May 22, 1983. The letter warned: "If you fail to have these Answers filed, you may lose any claim you have with the insurance company as your Petition will be dismissed. Therefore, you may either return the executed Answers to Interrogatories to my office for filing or request the attorney who is now representing you to file the same prior to May 22."

According to Hackworth, all of his letters to plaintiff were addressed to Route 1, Box 127, Alton, Missouri 65606. The copy of the trial court's order of June 20, 1983, was also sent to plaintiff at that address. The insurance policy (the inception date of which was December 12, 1980) showed that address as plaintiff's address. Plaintiff, in her interrogatory answers (sworn to on July 8, 1983), gave her address as "Rt. 1, Alton, MO 65606." Hackworth testified that none of his correspondence to plaintiff was ever returned unclaimed.

On November 21, 1983, the trial court received Hackworth's deposition in evidence. On December 5, 1983, the trial court again took up plaintiff's motion of August 4, 1983, to set aside the dismissal of July 5, 1983, and defendants' motion of July 20, 1983, to strike plaintiff's interrogatory answers and her petition. Defendants appeared by attorney Freeman. Neither plaintiff nor her attorney appeared.

The trial court entered an "Order of Dismissal with Prejudice," providing, in pertinent part:

"Defendants Eugene Horton and Dale E. Amick's Motion to Strike Interrogatories and Dismiss Plaintiff Ruby Lee Amick's Cause of Action filed herein on July 20, 1983, is hereby sustained and Plaintiff Ruby Lee Amick's Petition and cause of action filed herein is dismissed with prejudice at cost of plaintiff.

Plaintiff Ruby Lee Amick's Motion To Set Aside Order of Dismissal filed herein

---

**2.** Evidently Farm Bureau Insurance Company. Both defendants, in answering interrogatories, stated they had insurance with that company which might be liable to satisfy all or part of any judgment against them.

on July 5, 1983, which Order of Dismissal was reopened for additional evidence by order of this court on August 4, 1983, and such Motion To Set Aside Order of Dismissal is hereby overruled, set aside and for naught held and plaintiff's cause of action is hereby ordered dismissed with prejudice at cost of plaintiff.

Ordered this 5th day of December, 1983."

Plaintiff appeals from this order, briefing two assignments of error. The first is that the trial court erred in making no determination whether defendants were prejudiced by plaintiff's failure to answer the interrogatories by July 5, 1983, the ultimate deadline fixed by the court. Plaintiff's contention, as we understand it, is that it was wrong for the trial court to dismiss her claim absent a finding that her dereliction in answering resulted in prejudice to defendants.

In support of her position, plaintiff cites four cases, the most recent of which is *Crompton v. Curtis-Toledo, Inc.*, 661 S.W.2d 645 (Mo.App.1983). There, the plaintiff, during the taking of his deposition, was asked the name of a person involved in an incident pertinent to the suit. The plaintiff replied that he did not recall the person's name. Interrogatories requesting the same information produced a similar answer. At trial, two and a half years after the deposition, the plaintiff called the previously unidentified person as a witness. The defendant objected, asking that the witness be barred from testifying or that the trial be recessed until the following morning so that the witness' deposition could be taken. The trial court granted the defendant no relief and allowed the witness to testify. Judgment in favor of the plaintiff was reversed, the appellate court holding that the plaintiff had breached his continuing duty to supplement the information requested in discovery. The opinion states that in such circumstances, prior to imposing sanctions on the errant party, the trial court must first determine whether in the particular situation the opposing party has been prejudiced. *Id.* at

650[4]. The trial court in *Crompton* failed to make that determination. However, the appellate court, observing that the witness' testimony was crucial to the plaintiff's case, found that the defendant was prejudiced by the nondisclosure and that the trial court abused its discretion in not allowing the defendant to depose, or at least interview, the witness before he testified. *Id.* at 651[9].

The other three cases cited by plaintiff, *State ex rel. State Highway Commission v. Cool's Tall Tower Restaurant and Marina, Inc.*, 654 S.W.2d 224 (Mo.App.1983), *Sagehorn v. Phillips Petroleum Co.*, 648 S.W.2d 647 (Mo.App.1983), and *N.W. Electric Power Cooperative, Inc. v. Buckstead*, 578 S.W.2d 314 (Mo.App.1979), deal with situations similar to *Crompton.*

In *Cool's Tall Tower*, a condemnation case, the landowner sought to call four expert witnesses on the issue of valuation. More than two years before trial, the condemnor had, by interrogatory, asked for the names of all expert witnesses the landowner intended to call. None were disclosed until five days before trial when the landowner supplied the names of two. At the start of the trial the landowner supplied the names of the other two. On objection by the condemnor, the trial court excluded the testimony of all four. On appeal by the landowner, the trial court was upheld.

In *Sagehorn*, it was discovered during trial that the defendant had inadvertently failed to disclose and produce certain documents requested by the plaintiff in pretrial discovery. The trial court refused to allow the defendant to use the documents but denied a request by the plaintiff to strike the defendant's pleadings or to grant a mistrial. On appeal by the plaintiff, the trial court's action was upheld.

In *Buckstead*, a condemnation case, the landowners' answers to the condemnor's interrogatories were due six days before trial. The answers were filed two days before trial (four days late). In their answers, the landowners identified themselves as the only persons who would testi-

fy on the issue of value. At a conference just before trial, the landowners identified two other witnesses they intended to call on that issue. The condemnor's objection to those witnesses was overruled, and they were allowed to testify. On appeal by the condemnor, the trial court's ruling was upheld, the appellate court noting that in its objection at trial, the condemnor stated no claim of prejudice. *Id.* at 317.

The element that distinguishes the instant case from 'the four cited by plaintiff is that in each of the latter, a party sought, *at trial,* to call witnesses or present evidence which, during discovery, the party had either failed to timely disclose or failed to disclose at all. Each of the four cases points out that in such a situation, it is for the trial court to determine whether the other party has been prejudiced, and, if so, to decide, in the exercise of its discretion, what sanctions to impose on the culpable party. *Crompton,* 661 S.W.2d at 650; *Cool's Tall Tower,* 654 S.W.2d at 226[1]; *Sagehorn,* 648 S.W.2d at 649; *Buckstead,* 578 S.W.2d at 317.

The trial court in the instant case was not confronted by that type of problem. The issue whether to impose sanctions on plaintiff for failure to answer defendants' interrogatories by the due date did not arise during trial. It arose when plaintiff ignored the final deadline and the trial court, consistent with its order of June 20, 1983, ordered plaintiff's cause of action dismissed.[3] The trial court did not find itself in the position of having to decide, during an ongoing trial, whether to allow plaintiff to use evidence that should have been, but was not, disclosed during discovery.

The instant case presents the same issue as *Portell v. Portell,* 643 S.W.2d 18 (Mo. App.1982), and *Wipke v. Louisiana Farm Supply, Inc.,* 622 S.W.2d 772 (Mo.App. 1981), cited by defendants. In *Portell,* a petitioner failed to answer interrogatories, prompting the respondent to file a motion

for sanctions. The trial court granted the motion, ordering the petitioner to answer by a certain deadline and providing that if she failed to do so, her pleadings would be stricken and judgment would be entered in favor of the respondent. The petitioner ignored the deadline, and the trial court, noting the interrogatories had gone unanswered for over three and a half months, imposed the sanctions. Some time thereafter, the petitioner filed the answers. Finding that the petitioner's conduct readily translated into a display of contumacious and deliberate disregard for the trial court's authority, the appellate court upheld the trial court. *Portell,* 643 S.W.2d at 20. The opinion, noting the absence of good cause or excuse for the petitioner's inaction, found no abuse of the trial court's discretion in refusing to set the judgment aside. *Id.* at 20[3–5].

In *Wipke,* the plaintiff, after considerable delay, was ordered to answer the defendant's interrogatories, but failed to answer two of them. More than two years later, the plaintiff was again ordered to answer the same two interrogatories, along with others. The plaintiff again failed to do so and, several months later, the plaintiff was once again ordered to answer. This order was likewise ignored, whereupon the trial court entered an order precluding the plaintiff from introducing certain evidence at trial and directing the plaintiff to produce other data by a certain deadline. This order stated that if the data were not produced, the plaintiff's pleadings would be stricken. When the plaintiff failed to comply, the trial court struck the plaintiff's pleadings and dismissed the cause with prejudice. This action was upheld, the appellate court noting that the record demonstrated that the plaintiff's inertia flouted the trial court's authority and that the trial court did not abuse its discretion in dismissing the case. *Id.* at 774.

*State ex rel. Jones v. Reagan,* 382 S.W.2d 426 (Mo.App.1964), also cited by

**3.** Although it may be arguable whether the order of July 5, 1983, dismissed plaintiff's claim, any uncertainty about that has become moot, as

the trial court's order of December 5, 1983, from which plaintiff appeals, specifically dismisses her cause of action with prejudice.

defendants, involved the application of similar sanctions against a defendant who failed, without justification, to answer interrogatories. Noting that the defendant was given at least four opportunities to comply with orders to answer, but failed to do so, *Reagan* upheld a trial court order striking the defendant's pleadings and entering judgment by default against the defendant. The opinion states:

> "If the trial court had no power to enter a default under these circumstances, then the rule has no purpose, and the answers to interrogatories could never be compelled. Whether or not defendant had an answer [to the plaintiff's petition] on file is not in point. Under the aggravated circumstances showing defendant's utter disregard for various orders of court and notice of motions, the trial court exercised its discretionary power to enter judgment by default for defendant's failure to answer interrogatories." *Id.* at 430.

Capsulizing the evidence heretofore set out, we note that plaintiff's answers to defendants' interrogatories were more than three months delinquent when Hackworth wrote plaintiff on February 4, 1983, sending her a duplicate set of the interrogatories and pointing out to her that they had to be answered before the suit could proceed.

The interrogatories remained unanswered for the next two months, and on April 18, 1983, after having been notified by Hackworth that he intended to request a trial setting, defendants filed their motion for sanctions.

This prompted Hackworth to write plaintiff on April 21, 1983, warning her that it was absolutely necessary that she make an immediate appointment to confer with him and answer the interrogatories. This letter led to plaintiff's conference with Hackworth on April 25, 1983, in which she supplied the information to answer the interrogatories.

The trial court's first order compelling plaintiff to answer the interrogatories was entered May 2, 1983. As noted earlier, it commanded plaintiff to file the answers within 20 days and provided that if she failed to do so, her petition would be dismissed without further order or notice.

Hackworth, on May 5, 1983, mailed plaintiff the typewritten answers prepared in his office. In an accompanying letter, Hackworth implored plaintiff to sign the answers and return them immediately, as the trial court would dismiss her petition unless the answers were filed within 20 days.

On May 10, 1983, Hackworth, having been notified by plaintiff that she was discharging him as her attorney, again warned plaintiff by letter that her answers to the interrogatories had to be filed by May 22, 1983. That date, as we have seen, passed with no answers being filed by plaintiff.

On June 20, 1983, almost a month past the deadline of May 22, the trial court entered its second order, extending the deadline to July 5, 1983. This order, like the first, provided that if the answers were not filed by the deadline, plaintiff's petition would be dismissed without further order or notice. A copy of this order was mailed to plaintiff at the same address to which all of Hackworth's correspondence had been directed. The trial court could reasonably find that plaintiff received all of these mailings, as none of them were ever returned to the sender.

In sum, there is persuasive evidence that plaintiff was warned by Hackworth in at least four letters that she must answer the interrogatories. Two of the letters specifically put plaintiff on notice about the first court-set deadline (May 22, 1983). Hackworth's letter of May 10, 1983, written after he had been notified by plaintiff that she had discharged him, even offered to file the answers for her if she would simply return them to his office.

By the time the May 22, 1983, deadline arrived, Hackworth's motion for leave to withdraw as plaintiff's attorney was on file. Whether that is why the trial court imposed no sanctions on plaintiff for fail-

ure to honor the May 22 deadline is not revealed.

In any event, the trial court, at the time it formally allowed Hackworth to withdraw (June 20, 1983), entered the *sua sponte* order allowing plaintiff until July 5, 1983, to answer the interrogatories. The trial court was careful to ensure that a copy of that order was sent to plaintiff.

The trial court could have reasonably found that plaintiff received the typewritten answers to the interrogatories a day or two after May 5, 1983, the day they were mailed from Hackworth's office. Plaintiff, at the hearing on August 4, 1983, did not complain that any of the typewritten answers were incorrect, nor did she have any excuse for keeping them two months without filing them. Indeed, the answers ultimately filed by plaintiff were evidently the same ones prepared in Hackworth's office.

On this evidence, it was within the trial court's sound discretion to order plaintiff's cause of action dismissed with prejudice. Plaintiff's failure to answer defendants' interrogatories, despite at least four warnings by Hackworth and two orders by the court, manifests the same contumacious and deliberate disregard for the trial court's authority found in *Portell*, 643 S.W.2d 18, *Wipke*, 622 S.W.2d 772, and *Reagan*, 382 S.W.2d 426. It was consequently unnecessary for the trial court to determine whether, or to what extent, defendants were prejudiced by plaintiff's failure to answer the interrogatories by the final deadline fixed by the court. The trial court's action was authorized by Rule 61.-01(b)(1) and (2), Missouri Rules of Civil Procedure (14th ed. 1983), and we find no abuse of discretion. Plaintiff's first point is, accordingly, denied.

■ Plaintiff's second assignment of error maintains the trial court abused its discretion in failing to impose "less drastic" sanctions on her. Plaintiff suggests that if her claim had gone to trial, and if, at trial, defendants had demonstrated that they were prejudiced by plaintiff's failure to seasonably answer the interrogatories, the trial court could have, at that time, chosen a "course of action" to alleviate the prejudice. Plaintiff adds that she was unrepresented by counsel at the time the answers were due and that there was no evidence that her failure to file her answers stemmed from a contumacious and deliberate disregard for the trial court's authority.

What we have said in considering plaintiff's first assignment of error is likewise pertinent to these contentions. The trial court and defendants were not obliged to indulge plaintiff's disregard of the discovery rules until trial. Defendants were entitled to have their interrogatories answered by the ultimate deadline fixed by the court, so that the information requested could be used for further discovery and trial preparation. To hold that the trial court should have waited until trial to deal with plaintiff's refusal to answer the interrogatories would emasculate the discovery rules.

■ As to plaintiff's insistence that she was innocent of any contumacious and deliberate disregard for the trial court's authority, we note that her avowed ignorance of the importance of filing answers within the time ordered by the court was in sharp conflict with Hackworth's testimony that he repeatedly warned her about this by letter. The trial court was not required to believe plaintiff's vague and evasive testimony. *Whitenton v. Whitenton*, 659 S.W.2d 542, 546[2] (Mo.App.1983); *Prudential Property and Casualty Ins. Co., Inc. v. Cole*, 586 S.W.2d 433, 434[3] (Mo.App. 1979). Moreover, the typewritten answers were, according to Hackworth, in plaintiff's hands by May 6 or 7, 1983. All she had to do was sign them under oath and file them. That is manifest from the fact that the answers, when belatedly filed, were the same ones prepared and typed at Hackworth's office.

Bearing in mind that it was within the trial court's sound discretion to impose the sanctions here applied, *Portell*, 643 S.W.2d at 20; *Wipke*, 622 S.W.2d at 774, and finding no abuse of discretion in this instance,

we deny plaintiff's second assignment of error.

The order of dismissal is affirmed.

PREWITT, C.J., and TITUS, FLANIGAN and MAUS, JJ., concur.